## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GABRIELLE STUVE and JESSICA NICODEMO, on behalf of themselves and all others similarly situated, | ) Case No.<br>)<br>) Judge:<br>) |
| Plaintiffs, | )<br>) **JURY TRIAL DEMANDED** |
| v. | )<br>) |
| THE KRAFT HEINZ COMPANY a/k/a KRAFT HEINZ FOODS COMPANY, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiffs Gabrielle Stuve and Jessica Nicodemo ("Plaintiffs"), by and through their counsel, on their own behalf and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant The Kraft Heinz Company a/k/a Kraft Heinz Foods Company ("Kraft" or "Defendant") and allege the following facts in support of their claims against Defendant based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## I.     INTRODUCTION

1.     The ubiquitous boxed macaroni and cheese has long been a staple meal in many U.S. households for children and adults alike.  Defendant has profited from this fact with massive sales of its popular Kraft boxed macaroni and cheese products (the "Kraft Mac & Cheese Products" or the "Products").  By some reports, approximately a million boxes of Kraft Mac & Cheese Products are sold every day.[1]  But Defendant has improperly and misleadingly packaged and marketed its Products to reasonable consumers, like Plaintiffs, by failing to disclose on the Products' packaging that they contain (or are at a risk of containing) "ortho-phthalates," also known as "phthalates," which are harmful chemicals that carry a real risk of health impacts if consumed.

2.     There is increasing scientific evidence linking phthalate exposure with harmful health outcomes and dairy has been found to be a major source of exposure.  For most people, food is generally the greatest exposure to phthalates and fattier and more processed foods tend to have the highest phthalate levels.  The cumulative effect of phthalates is concerning, particularly

---

[1] *See* https://www.insider.com/things-you-didnt-know-about-kraft-macaroni-and-cheese-2020-5#today-roughly-a-million-boxes-of-kraft-mac-and-cheese-are-sold-every-day-5 (Jan. 20, 2021) (last accessed April 2, 2021).

because studies show that one in five American adults eats 81 percent of their calories from ultra-processed foods, including foods such as powdered macaroni and cheese products.

3. Phthalates are classified as endocrine-disrupting chemicals and have been linked to adverse health effects. For example, studies have found that in adult populations, there is an association between phthalate exposure and markers of testicular function in men, particularly decreased semen quality. There is also evidence linking endometriosis in women with high phthalate metabolite levels and increases in waist circumference and body mass index (BMI) have been linked to exposure in men and adolescent and adult females.

4. Moreover, scientific findings have shown that pre-natal exposure to phthalates is highly dangerous to the fetus and leads to multiple harms once the children are born, including neurodevelopmental problems such as ADHD, anti-social behavior, learning and memory problems, and genital birth defects in boys. In fact, according to a press release dated February 19, 2021, announcing a recent peer-reviewed study published in the American Journal of Public Health, "[p]renatal exposure to the widely used plasticizer chemicals called phthalates can lead to learning, attention and behavioral disorders in children." The press release noted that the "study reviewed data from the past decade measuring prenatal exposure to phthalates or environmental estimates of exposures from 11 countries or territories. It found consistent associations between phthalates and behaviors typically linked to ADHD and impaired cognitive development, including lower IQ, reduced psychomotor development and impaired social communication." In fact, in 2008, Congress banned several phthalates from children's toys and childcare articles.

5. Reasonable consumers, like Plaintiffs, trust manufacturers like Defendant to sell food that is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals.

Reasonable consumers, like Plaintiffs, certainly expect the food they eat and feed their family to be free from phthalates, substances known to have health consequences.

6.      Consumers lack the scientific knowledge necessary to determine whether the Products do in fact contain (or have a risk of containing) phthalates, or other undesirable toxins or contaminants, or to ascertain the true nature of the ingredients and quality of the Products. Reasonable consumers therefore must and do rely on Defendant to be transparent and properly disclose on the packaging all material information and not misrepresentation the true quality of the Products. However, public reports and articles, including in the recesses of Defendant's own website, reveal that the Kraft Mac & Cheese Products contain (or are at risk of containing) phthalates.

7.      Despite this, the consumer-facing message on the packaging that Defendant chose failed to reference anything on phthalates. Indeed, nowhere on the Products' packaging or labeling is there any disclosure on the inclusion (or possible inclusion) of phthalates. Instead, the Kraft Mac & Cheese Products' packaging represents that its Products are wholesome and healthy. The package promises that the Products are "The Taste You Love" as they have "NO Artificial Flavors" and "NO Artificial Preservatives" and "NO Artificial Dyes." This leads reasonable consumers to believe the product is wholesome and healthy and does not contain dangerous chemicals like phthalates.

8.      But phthalates are toxic industrial chemicals that are far from wholesome or healthy. On the "Frequently Asked Questions" section of the kraftmacandcheese.com website, under the question, "Should I be concerned about food and phthalates?," Defendant states that it "know[s] moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the

family."[2]  Thus, it acknowledges reliance by its customers on its representations that the Kraft Mac & Cheese Products are healthy and safe to eat and free from dangerous chemicals.  Defendant further acknowledges that phthalates are found in many food products and states that Defendant is seeking to learn how "phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them."[3]  While the statements on the kraftmacandcheese.com website are buried in the Frequently Asked Questions section, they are nonetheless an admission by Defendant that it is information a reasonable consumer would consider important.  Yet no information about the presence (or risk) of phthalates in the Kraft Mac & Cheese Products is disclosed anywhere on the packaging.

9.      Plaintiffs bring this class action against Defendant for deceptive business practices, including misrepresentations and omissions, as well as breach of warranty and unjust enrichment, regarding the presence (or risk) of dangerous phthalates in the Kraft Mac & Cheese Products, including those that Plaintiffs purchased.  Plaintiffs seek injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class. Through this action, Plaintiffs assert claims for breach of warranty and unjust enrichment, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 *et seq.*, the Florida Deceptive and Unfair Trade Practices Act § 501.201, New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, and the New York Consumer Law for False Advertising,

---

[2] https://www.kraftmacandcheese.com/faq (last accessed April 2, 2021).
[3] *Id.*

N.Y. Gen Bus. Law § 350, seeking monetary damages, injunctive relief, and all other relief as authorized in equity or by law.

## PARTIES

### *Plaintiffs*

10.     Plaintiff Jessica Nicodemo is a citizen and resident of the State of Florida, residing in Branford, Florida.  During the applicable statute of limitations period, Plaintiff Nicodemo purchased Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor.  Plaintiff Nicodemo relied on the material misrepresentations discussed herein that the Products are healthy, nutritious and wholesome, and on the material omission that the Products contain (or risk containing) dangerous phthalates.  Plaintiff Nicodemo was unaware that the Products contained phthalates and would not have purchased the Products if that were fully disclosed.  As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff Nicodemo was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised.  Plaintiff Nicodemo paid the above sum in reliance that the labeling of the Products was accurate, that there were no material omissions, and that the Products were healthy, nutritious and wholesome.  Plaintiff Nicodemo would not have purchased the Products had she known they contained phthalates.  Plaintiff Nicodemo would purchase the Products again if Defendant (i) eliminated the phthalates; and (ii) undertook corrective changes to the packaging to affirm same.  Damages can be calculated through expert testimony at trial.

11.     Plaintiff Gabrielle Stuve is a citizen and resident of the State of New York, residing in Hauppauge, New York.  During the applicable statute of limitations period, Plaintiff Stuve

purchased Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor.  Plaintiff Stuve relied on the material misrepresentations discussed herein that the Products are healthy, nutritious and wholesome, and on the material omission that the Products contain (or risk containing) dangerous phthalates.  Plaintiff Stuve was unaware that the Products contained phthalates and would not have purchased the Products if that were fully disclosed.  As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff Stuve was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised.  Plaintiff Stuve paid the above sum in reliance that the labeling of the Products was accurate, that there were no material omissions, and that the Products were healthy, nutritious and wholesome.  Plaintiff Stuve would not have purchased the Products had she known they contained phthalates.  Plaintiff Stuve would purchase the Products again if Defendant (i) eliminated the phthalates; and (ii) undertook corrective changes to the packaging to affirm same.  Damages can be calculated through expert testimony at trial.

***Defendant Kraft***

12.     Defendant Kraft is a Delaware corporation with co-headquarters in Chicago, Illinois and Pittsburgh, Pennsylvania.  On the back of the box of the Products, it states "Kraft Heinz Foods Company Chicago, IL 60601."

13.     Kraft operates a factory in Champaign, Illinois with some 900 employees on 32 acres that makes half of the Kraft macaroni and cheese sold in the United States.[4]

14.     Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells Kraft Mac & Cheese Products throughout the United States, including Illinois, Florida and New York.

15.     Public reports indicate that Kraft is the largest seller of macaroni and cheese products in the United States.[5]

16.     Defendant's website is https://www.kraftmacandcheese.com/.

17.     Defendant shows 18 "Blue Box" Kraft Mac & Cheese Products on its website.[6]

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse

---

[4] *See* https://www.dallasnews.com/business/2020/04/09/we-cant-make-enough-mac-and-cheese-processed-food-is-undergoing-a-renaissance/ (last accessed April 2, 2021).
[5] *See* https://finance.yahoo.com/news/pepsi-co-will-take-aim-at-kraft-mac-cheese-dominance-this-fall-160443211.html (last accessed April 2, 2021).
[6] Those are as follows: Kraft Original Flavor Macaroni & Cheese Dinner; Kraft Three Cheese Macaroni & Cheese Dinner; Kraft Macaroni & Cheese Dinner Value Size; Kraft Original Macaroni & Cheese Dinner Family Size; Kraft Original Flavor Macaroni & Cheese Dinner 4 pack; Kraft Thick & Creamy Macaroni & Cheese Dinner; Kraft Paw Patrol Shapes Macaroni & Cheese Dinner; Kraft Unicorn Shapes Macaroni & Cheese Dinner; Kraft Spirals Macaroni & Cheese Dinner; Kraft White Cheddar Macaroni & Cheese Dinner; Kraft Gluten Free Macaroni & Cheese Dinner; Kraft Paw Patrol Ready Race Rescue Shapes Macaroni & Cheese Dinner; Kraft Macaroni & Cheese Cauliflower Original; Kraft Original Flavor Whole Grain Macaroni &

state citizenship from Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

19.     The Northern District of Illinois has personal jurisdiction over Defendant as Defendant conducts substantial business in this District and has its co-headquarters located in the District.

20.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant has its co-headquarters located in the District and because a substantial part of the events, misrepresentations and/or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, and emanated from this District.

## II.     FACTUAL ALLEGATIONS

### Phthalates Are Toxic Industrial Chemicals Found in Boxed Macaroni and Cheese

21.     In 2017, the Coalition for Safer Food Processing and Packaging (the "Coalition"), a group of nonprofit consumer health and food safety advocacy organizations, published a study (the "Study") that tested, among other cheese products, cheese powder in ten varieties of macaroni and cheese.[7]  The Study concluded that phthalates were found in all 10 of the varieties and that on average the phthalate levels in the ten macaroni and cheese powders tested were **more than four times higher** than in the 15 natural cheeses  tested, which were block cheese, string cheese, cottage cheese, and shredded cheese.[8]  The Study also concluded that "DEHP, the most widely restricted

---

Cheese Dinner; Kraft Macaroni & Cheese Frozen II Shapes Dinner; Kraft Thick 'N Creamy Macaroni & Cheese Dinners; Kraft Original Cheddar Macaroni & Cheese Dinner with White Bean Protein; and Kraft Original Flavor Macaroni & Cheese Dinner Wrapped.  *See* https://www.kraftmacandcheese.com/products/100166000002/blue-box (last accessed April 2, 2021).

[7] *See* http://kleanupkraft.org/data-summary.pdf (last accessed April 2, 2021).

[8] *See* PhthalatesLabReport.pdf (kleanupkraft.org) (last accessed April 2, 2021).

phthalate, was found more often and at a much higher average concentration than any other phthalate, among all the cheese products tested."[9]

22.     Although the Study did not publicly identify the brands for which the cheese powder was tested, given the results of the Study, the Coalition wrote a public letter dated June 14, 2017 to the Chief Executive Officer of Kraft, asking it, as the leading U.S. seller of macaroni and cheese products, to "eliminate toxic industrial chemicals known as *ortho*-phthalates from your food products."[10]  According to the letter, the Coalition stated that it had detected phthalates in Kraft's products through the testing and wanted to meet with Kraft to discuss this as it was planning a public outreach campaign.[11]  The letter stated that pregnant women and young children are the "most vulnerable groups" and that food is "often the number one source of phthalates exposure."[12]  Fatty foods, including dairy products, appears to be "the greatest contributor of dietary exposure to phthalates," according to the letter.[13]  The Coalition explained and cited the scientific findings to date showing that pre-natal exposure to phthalates is highly dangerous to the fetus and leads to multiple harms once the children are born, including neurodevelopmental problems such as ADHD, anti-social behavior, learning and memory problems, and genital birth

---

[9] http://kleanupkraft.org/data-summary.pdf (last accessed April 2, 2021).  *See also* Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalates and Phthalate Alternatives, July 2014, U.S. Consumer Product Safety Commission, Directorate for Health Sciences, https://www.cpsc.gov/s3fs-public/CHAP-REPORT-With-Appendices.pdf (last accessed April 2, 2021), at 90 (CPSC states that regarding DEHP, which is not allowed in children's toys and child care products at levels greater than 0.1%, "[a] complete dataset suggests that exposure to DEHP in utero can induce adverse developmental changes to the male reproductive tract. Exposure to DEHP can also adversely affect many other organs such as the liver and thyroid.").

[10] http://kleanupkraft.org/kraft-phthalates-6-14-17.pdf (last accessed April 2, 2021).

[11] *See id.*

[12] *Id.*

[13] *Id.*

defects in boys.[14]  Moreover, the letter stated that cumulative exposure to phthalates is of particular concern.[15]  The letter noted that "safer alternatives are already commercially available for many uses of phthalates."[16]

23.     In a public statement dated July 20, 2017, following the letter to Kraft's CEO, the Coalition further noted: "This serious public health risk stems from daily exposure to phthalates from *all* sources combined.  This is what's known as an unacceptable 'cumulative risk.'  Kraft asserts that the amount of phthalates in the products we tested is many times 'lower than levels that scientific authorities have identified as acceptable.'  What Kraft didn't say is that the only acceptable levels that exist apply to the *total* daily intake of phthalates from *all* sources combined, not from any single product.  With phthalates found in some dairy products, baked goods, oils, infant formula, fast food, consumer products, house dust – together, these daily exposures add up to too much."[17]  The letter further noted that the ten macaroni and cheese powders that were tested "had the highest levels of phthalates of the product items we tested."[18]

24.     In the Frequently Asked Questions portion of Defendant's website, while it acknowledged the Study, that its Kraft Mac & Cheese Products do contain (or risk containing) phthalates, and that it is important to "reduce or eliminate" such phthalates, it never disclosed anything about phthalates on the Products' packaging.[19]

25.     It appears that the Food and Drug Administration ("FDA") has not adopted a standard for acceptable levels of phthalates in food.

---

[14] *See id.*
[15] *See id.*
[16] *Id.*
[17] https://www.kleanupkraft.org/CoalitionStatement7-20.pdf (last accessed April 2, 2021).
[18] *Id.*
[19] https://www.kraftmacandcheese.com/faq (last accessed April 2, 2021).

26.     The cumulative effect of phthalates is particularly concerning, especially since studies show that one in five American adults eats 81 percent of their calories from ultra-processed foods, including foods such as powdered macaroni and cheese products.[20]  In a recent letter, dated March 11, 2020, addressed to the Chief Executive Officer of The Kraft Heinz Company, which included signatories from disability organizations from 22 states, the chair of Harvard's Department of Environmental Health, and public health experts from several additional universities, the signatories noted that the "National Academy of Sciences estimates that environmental factors, including toxic chemicals, cause or contribute to at least a quarter of learning and developmental disabilities in American children," and that Kraft should lead the industry "by ensuring its supply chain is free of phthalates."[21]  The letter further stated that "[s]cientific studies show that daily cumulative exposure to phthalates poses an unacceptable health risk to pregnant women and young children.  Elevated phthalate exposure has been found to interfere with the reproductive functions of both men and women and impede brain development in children.  For most people, the food we eat is the greatest exposure pathway to phthalates.  Foods that are fattier and more processed tend to have the highest phthalate levels."[22]

27.     Studies in addition to those noted above indicate and/or discuss the harmful and dangerous effects of phthalates.  For example, a study in 2014 sought to identify the primary foods associated with increased exposure to phthalates.  The study stated, "Given the increasing scientific evidence base linking phthalate exposure with harmful health outcomes, it is important to

---

[20] *See, e.g.*, https://www.ewg.org/news-and-analysis/2019/09/kraft-heinz-rejects-effort-get-phthalates-out-mac-and-cheese (citing https://pubmed.ncbi.nlm.nih.gov/30820487/) (last accessed April 2, 2021).

[21] https://www.toxicfreefood.org/wp-content/uploads/LDA-Sign-On-Letter-to-Kraft-Heinz-3.11.20.pdf (last accessed April 2, 2021).

[22] *Id.*

understand major sources of exposure."[23]  Dairy was found to be one of those sources.  According to the study, phthalates "are classified as endocrine-disrupting chemicals and have been linked to adverse health effects particularly in relation to early life exposure."  The study further noted that in "adult populations, various epidemiological studies support an association between phthalate exposure and markers of testicular function in men, particularly decreased semen quality."  It also noted that "evidence linking endometriosis in women with high phthalate metabolite levels" and "[i]ncreases in waist circumference and body mass index (BMI) have been linked to DEHP, BzBP, DBP and DEP exposure in men and DEP exposure in adolescent and adult females."[24]

28.      Another study in 2014, which "examined the temporal trends in urinary concentrations of phthalates metabolites in the general U.S. population," also indicated that such testing was important due to "the scientific community and public's concern over phthalate toxicity," including the banning of the use of certain phthalates in toys, food-containing materials, and cosmetics in the European Union, as well as toys and other child care articles in the U.S.[25] The study noted:  "Human epidemiologic studies have reported associations between exposure to DnBP, BBzP, and some other phthalates and adverse male reproductive outcomes, including reduced sperm quality, increased sperm DNA damage, and altered male genital development (Hauser et al. 2006, 2007; Meeker et al. 2009; Swan et al. 2005).  Other studies have reported associations between gestational exposures to phthalates, including DEP, DnBP, BBzP, and

---

[23] Serrano SE, Braun J, Trasande L, Dills R, Sathyanarayana S (2014) Phthalates and diet: a review of food monitoring and epidemiology data. Environmental Health 13:43, https://ehjournal.biomedcentral.com/articles/10.1186/1476-069X-13-43 (last accessed April 2, 2021).
[24] *Id.*
[25] Zota AR, Calafat AM, Woodruff TJ (2014) Temporal Trends in Phthalate Exposures: Findings from the National Health and Nutrition Examination Survey, 2001-2010 Environmental Health Perspectives 122(3):235-241, https://ehp.niehs.nih.gov/doi/10.1289/ehp.1306681 (last accessed April 2, 2021).

DEHP, and outcomes suggesting impaired behavioral development (Braun et al. 2013; Engel et al. 2009; Swan et al. 2010; Whyatt et al. 2012)."[26]

29.     According to a press release dated February 19, 2021, announcing a recent peer-reviewed study published in the American Journal of Public Health, "[p]renatal exposure to the widely used plasticizer chemicals called phthalates can lead to learning, attention and behavioral disorders in children."[27]  The press release noted that the "study reviewed data from the past decade measuring prenatal exposure to phthalates or environmental estimates of exposures from 11 countries or territories.  It found consistent associations between phthalates and behaviors typically linked to ADHD and impaired cognitive development, including lower IQ, reduced psychomotor development and impaired social communication."[28]

30.     In 2008, Congress banned several phthalates from children's toys and childcare articles.[29]  Previously, in 2005, the European Parliament endorsed a ban on certain types of phthalates used in children's toys and other childcare products.[30]

**Defendant's Knowledge and Material Misrepresentations and Omissions Regarding Phthalates**

31.     Defendant chose to omit from all packaging that its Kraft Mac & Cheese Products contain (or have a risk of containing) dangerous phthalates which have been shown to be harmful

---

[26] *Id.*

[27]  *See* https://www.ewg.org/release/study-shows-mounting-evidence-plasticizer-chemicals-harm-fetus (last accessed April 2, 2021).

[28] *Id.*

[29] *See* https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Phthalates-Information/ (last accessed April 2, 2021); *see also* Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalates and Phthalate Alternatives, July 2014, U.S. Consumer Product Safety Commission, Directorate for Health Sciences, https://www.cpsc.gov/s3fs-public/CHAP-REPORT-With-Appendices.pdf (last accessed April 2, 2021).

[30] *See, e.g.*, https://www.nbcnews.com/id/wbna8473765 (last accessed April 2, 2021).

to health, including to pregnant women and children, particularly on a cumulative basis, while falsely and deceptively touting its products as healthy, wholesome and nutritious.[31]

32.     Defendant's packaging for Kraft Mac & Cheese Products portrays the products as wholesome and healthy.  The package promises that the Products are "The Taste You Love" as they have "NO Artificial Flavors" and "NO Artificial Preservatives" and "NO Artificial Dyes." This leads reasonable consumers to believe the product is wholesome and healthy and does not contain dangerous chemicals like phthalates.

33.     But phthalates are toxic industrial chemicals that are far from wholesome or healthy.  While Defendant prominently represents on the front of the package that there are no "artificial" flavors, preservatives or dyes in the Kraft Mac & Cheese Products, the Products contain (or are at risk of containing) dangerous and harmful phthalates, which is nowhere disclosed on the package.

34.     On the "Frequently Asked Questions" section of the kraftmacandcheese.com website, under the question, "Should I be concerned about food and phthalates?," Defendant states that it "know[s] moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family."[32]  Thus, it acknowledges reliance by its customers on its representations that the Kraft Mac & Cheese Products are healthy and safe to eat and free from dangerous chemicals.  Defendant further acknowledges that phthalates are found in many food products and states that Defendant is

---

[31] Kraft has begun promoting eating its Kraft Mac & Cheese Products for breakfast.  *See* https://news.kraftheinzcompany.com/press-releases-details/2020/Its-Official-Kraft-Mac--Cheese-Is-Approved-for-Breakfast/default.aspx (Aug.4, 2020) (last accessed April 2, 2021) (Kraft mac and cheese is "part of a balanced breakfast"; brand manager for Kraft in Chicago stated, "As a brand loved by the entire family, we've learned Kraft Mac & Cheese isn't just for dinner…. A Kraft Mac & Cheese breakfast is a win-win for families at a time when they need all the wins they can get.").

[32] https://www.kraftmacandcheese.com/faq (last accessed April 2, 2021).

working to learn how "phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them."[33]   While the statements on the kraftmacandcheese.com website are buried in the Frequently Asked Questions section, they are nonetheless an admission by Defendant that it is information a reasonable consumer would consider important.  Yet no information about the presence (or risk) of phthalates in the Kraft Mac & Cheese Products is disclosed anywhere on the packaging.

35.     The Products' misrepresentations and omissions are illustrated by the picture of the Kraft Mac & Cheese Product shown below.



---

36.     Defendant's website confirms the misrepresentations made to consumers, including Plaintiffs and the Class, on the packaging of Kraft Mac & Cheese Products that such products are healthy, wholesome and nutritious and free from dangerous chemicals.  Defendant states on the website that its Kraft Mac & Cheese Products are "[t]he part of parenting that's impossible to mess up" and that is "[b]ecause Kraft Mac & Cheese is made with no artificial flavors, preservatives, and dyes."[34]

37.     Based on Defendant's decision to advertise and market its Kraft Mac & Cheese Products on its packaging as healthy, nutritious, and safe for consumption, it had a duty to ensure that these and other statements were true and not misleading, which it failed to do.  Instead, Defendant omitted any information in its packaging regarding phthalates (or the risk of phthalates) in its Kraft Mac & Cheese Products.

38.     Kraft Mac & Cheese Products are available at numerous retail and online outlets. However, as discussed above, Defendant fails to disclose on its packaging that Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates.  Defendant intentionally omitted disclosure on its packaging of these dangerous chemicals to induce and mislead reasonable consumers to purchase its Kraft Mac & Cheese Products.

### III.     CLASS ACTION ALLEGATIONS

39.     Pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and a nationwide Class defined as:

> **All persons who, during the applicable statute of limitation period to the present, purchased Kraft Mac & Cheese Products in the United States for personal and/or household use, and not for resale (the "Class" or "Nationwide Class").**

---

[34] https://www.kraftmacandcheese.com/ (last accessed April 2, 2021).

40.     In addition, Plaintiff Nicodemo also seeks to represent a subclass (the "Florida Subclass"), defined as follows:

> **All persons who, during the applicable statute of limitation period to the present, purchased Kraft Mac & Cheese Products in Florida for personal and/or household use, and not for resale.**

41.     In addition, Plaintiffs Stuve also seeks to represent a subclass (the "New York Subclass"), defined as follows:

> **All persons who, during the applicable statute of limitation period to the present, purchased Kraft Mac & Cheese Products in New York for personal and/or household use, and not for resale.**

42.     The Class excludes Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, coconspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

43.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3) are satisfied.  Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

44.     **Numerosity:**  All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied.  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs.  Plaintiffs believe that the identity of Class members is known or knowable by Defendant or can be discerned through reasonable means.  Class members may be identified through objective means.  Class members may be notified of the pendency of this action by recognized, Court-approved notice

dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

45.     **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a.      whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b.      whether the misrepresentations and/or omissions by Defendant were likely to deceive a reasonable consumer;

c.      whether Defendant knew or should have known that the Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates;

d.      whether Defendant misrepresented and continues to misrepresent that the Kraft Mac & Cheese Products are healthy, nutritious, wholesome, and safe for consumption when such products contain (or risk containing) dangerous phthalates;

e.      whether Defendant failed to disclose that the Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates;

f.      whether Defendant was unjustly enriched by its actions;

g.      whether Defendant breached its warranties to Plaintiffs and the Class;

h.      whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

i.      whether Defendant violated the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1 *et seq.*;

j.      whether Defendant violated Florida's Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*;

k.      whether Defendant violated New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, and the New York Consumer Law for False Advertising, N.Y. Gen Bus. Law § 350;

l.      whether the misrepresented and/or omitted facts are material to a reasonable consumer;

m.      whether Plaintiffs and members of the Class were injured and suffered damages;

n.      whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief; and

o.      whether Plaintiffs and members of the Class are entitled to damages and, if so, the measure of such damages.

46.    **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs are members of the Nationwide Class and Florida or New York Subclasses, having purchased for personal/household use Kraft Mac & Cheese Products that were manufactured by Defendant. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

47.    **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are members of the Nationwide Class and Florida or New York Subclasses and their interests do not conflict with the interests of the other members of the Class that they seek to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class' collective best interests in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type and

Plaintiffs intend to prosecute this action vigorously. Plaintiffs, and their counsel, will fairly and adequately protect the Class' interests.

48. **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' individual cases will also resolve them for the Class' claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

49. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class making final declaratory or injunctive relief appropriate.

## IV.     CAUSES OF ACTION

### COUNT I
**Violations of Florida Deceptive and Unfair Trade Practices Act**
**§ 501.201 *et seq.***
**(On Behalf of Plaintiff Nicodemo and the Florida Subclass)**

50.     Plaintiff Nicodemo, individually and on behalf of the Florida Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Florida Stat. § 501.204(1).  Defendant participated in unfair, unconscionable and deceptive trade practices that violated FDUTPA as described herein.

52.     Plaintiff Nicodemo, individually, and the members of the Florida Subclass are "consumers" within the meaning of Florida Stat. § 501.203(7).

53.     Defendant engaged in "trade or commerce" within the meaning of Florida Stat. § 501.203(8).

54.     Defendant's Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates.  Defendant knew or should have known that its Kraft Mac & Cheese Products should not contain these levels of phthalates and/or at the amounts found therein, and that by manufacturing and providing for commercial sale food containing (or risking containing) dangerous phthalates, Plaintiff Nicodemo and the Florida Subclass members were not receiving healthy and/or nutritious food.

55.     Plaintiff Nicodemo and the Florida Subclass members would not have purchased the Kraft Mac & Cheese Products at issue had they known the truth about the presence (or risk) of dangerous phthalates.  There is no other use for Defendant's tainted products.

56.     Defendant violated FDUTPA by the use (or risk) of dangerous phthalates and failing to properly represent, both by affirmative conduct and by omission, the nutritional value of Defendant's Kraft Mac & Cheese Products.

57.     If Defendant had not sold Kraft Mac & Cheese Products containing (or risking containing) dangerous phthalates, Plaintiff Nicodemo and the other Florida Subclass members would not have suffered the extent of damages caused by Defendant's sales.

58.     Defendant's practices, acts, policies and course of conduct violate FDUTPA in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff Nicodemo and the Florida Subclass members at the time they purchased the Kraft Mac & Cheese Products, including the fact that Defendant's products contained (or risked containing) dangerous phthalates; and Defendant failed to disclose and give timely warnings or notices regarding the presence (or risk) of dangerous phthalates in its Kraft Mac & Cheese Products that were purchased by Plaintiff Nicodemo and the Florida Subclass members.

59.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence (or risk) of unacceptable dangerous phthalates in its Kraft Mac & Cheese Products.

60.     Members of the public, including Plaintiff Nicodemo and the members of the Florida Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

61.     Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing Kraft Mac & Cheese Products from Defendant.   Said acts and practices are material.  The sales of Defendant's Kraft Mac & Cheese Products in Florida through such means occurring in Florida were consumer-oriented acts and thereby fall under FDUTPA.

62.     As a direct and proximate cause of Defendant's conduct, Plaintiff Nicodemo and the Florida Subclass members suffered damages as alleged above.  Plaintiff Nicodemo also seeks injunctive relief as described herein.

63.     Pursuant to Florida Statute § 501.2105, Plaintiff Nicodemo, individually, and as a member of the Florida Subclass, is entitled to recover costs and reasonable attorneys' fees in this action.

## COUNT II
**Violations of New York Consumer Law for Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs Stuve and the New York Subclass)**

64.     Plaintiff Stuve, individually and on behalf of the New York Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

65.     New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

66.     By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 349.  The conduct alleged herein is a "business practice"

within the meaning of the NYGBL § 349, and the deception occurred in part within New York State.

67.     Defendant's Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates.  Defendant knew or should have known that its Kraft Mac & Cheese Products should not contain these levels of phthalates and/or at the amounts found therein, and that by manufacturing and providing for commercial sale food containing (or risking containing) dangerous phthalates, Plaintiff Stuve and the New York Subclass members were not receiving healthy and/or nutritious food.

68.     Plaintiff Stuve and the New York Subclass members would not have purchased the Kraft Mac & Cheese Products at issue had they known the truth about the presence (or risk) of dangerous phthalates.  There is no other use for Defendant's tainted products.

69.     Defendant violated the NYGBL § 349 by the use (or risk) of dangerous phthalates and failing to properly represent, both by affirmative conduct and by omission, the nutritional value of Defendant's Kraft Mac & Cheese Products.

70.     If Defendant had not sold Kraft Mac & Cheese Products containing (or risking containing) dangerous phthalates, Plaintiff Stuve and the other New York Subclass members would not have suffered the extent of damages caused by Defendant's sales.

71.     Defendant's practices, acts, policies and course of conduct violate NYGBL § 349 in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff Stuve and the New York Subclass members at the time they purchased the Kraft Mac & Cheese Products, including the fact that Defendant's products contained (or risked containing) dangerous phthalates; and Defendant failed to disclose and give timely warnings or notices regarding the presence (or risk) of dangerous phthalates in

its Kraft Mac & Cheese Products that were purchased by Plaintiff Stuve and the New York Subclass members.

72.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence (or risk) of unacceptable dangerous phthalates in its Kraft Mac & Cheese Products.

73.     Members of the public, including Plaintiff Stuve and the members of the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

74.     Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing Kraft Mac & Cheese Products from Defendant.    Said acts and practices are material.  The sales of Defendant's Kraft Mac & Cheese Products in New York through such means occurring in New York were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 349.

75.     As a direct and proximate cause of Defendant's conduct, Plaintiff Stuve and the New York Subclass members suffered damages as alleged above.  Plaintiff Stuve also seeks injunctive relief as described herein.

76.     In addition to or in lieu of actual damages, because of the injury, Plaintiff Stuve and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

## COUNT III

**Violations of New York Consumer Law for False Advertising**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiffs Stuve and the New York Subclass)**

77.     Plaintiff Stuve, individually and on behalf of the New York Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

78.     NYGBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York.

79.     By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 350.  The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 350, and the false advertising occurred in part within New York State.

80.     Defendant's Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates.  Defendant knew or should have known that its Kraft Mac & Cheese Products should not contain these phthalates and/or at the amounts found therein and that by manufacturing and providing for commercial sale Kraft Mac & Cheese Products that contain (or risk containing) dangerous phthalates, Plaintiff Stuve and the New York Subclass members were not receiving healthy and/or nutritious food.

81.     Plaintiff Stuve and the New York Subclass members would not have purchased the Kraft Mac & Cheese Products at issue had they known the truth about the presence (or risk) of dangerous phthalates.  There is no other use for Defendant's tainted products.

82.     Defendant violated the NYGBL § 350 by failing to properly represent, both by affirmative conduct and by omission, the nutritional value and safety of Defendant's Kraft Mac & Cheese Products.

83.     If Defendant had not sold Kraft Mac & Cheese Products that contained (or risk containing) dangerous phthalates, Plaintiff Stuve and the other New York Subclass members would not have suffered the extent of damages caused by Defendant's sales.

84.     Defendant's practices, acts, policies and course of conduct violate NYGBL § 350 in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff Stuve and the New York Subclass members at the time they purchased the Kraft Mac & Cheese Products, including the fact that Defendant's products contained (or risk containing) dangerous phthalates; and Defendant failed to disclose and give timely warnings or notices regarding the presence (or risk) of dangerous phthalates in its Kraft Mac & Cheese Products that were purchased by Plaintiffs Stuve and the New York Subclass members.

85.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence (or risk) of dangerous phthalates in its Kraft Mac & Cheese Products.

86.     Members of the public, including Plaintiff Stuve and the members of the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

87.     Such acts by Defendant are and were likely to mislead a reasonable consumer purchasing Kraft Mac & Cheese Products from Defendant.   Said acts and practices are material.  The sales of Defendant's Kraft Mac & Cheese Products in New York through such means occurring in New York were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 350.

88. As a direct and proximate cause of Defendant's conduct, Plaintiff Stuve and New York Subclass members suffered damages as alleged above and also seek injunctive relief as described herein.

89. In addition to or in lieu of actual damages, because of the injury, Plaintiff Stuve and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

90. Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

91. Plaintiffs and Class members conferred a monetary benefit on Defendant. Specifically, they purchased Kraft Mac & Cheese Products from Defendant and provided Defendant with their monetary payment. In exchange, Plaintiffs and Class members should have received from Defendant goods that were healthy and nutritious and did not contain (or risk containing) dangerous phthalates.

92. Defendant knew that Plaintiffs and Class members conferred a benefit on them and accepted or retained that benefit. Defendant profited from Plaintiffs' purchases and used Plaintiffs and Class members' monetary payments for business purposes.

93. Defendant failed to disclose to Plaintiffs and Class members that its Kraft Mac & Cheese Products were unhealthy and contained (or risk containing) dangerous phthalates and did not provide product that Plaintiffs and Class members were promised.

94.     If Plaintiffs and Class members knew that Defendant's Kraft Mac & Cheese Products were (or risked being) unhealthy and toxic as alleged herein, they would not have purchased Defendant's Kraft Mac & Cheese Products.

95.     Plaintiffs and Class members have no adequate remedy at law.

96.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and Class members conferred on them.

97.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that they unjustly received from them.  In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class members overpaid.

**COUNT V**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

98.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

99.     As set forth herein, Defendant made express representations to Plaintiffs and the Class on the packaging that the Kraft Mac & Cheese Products are healthy, wholesome, nutritious and safe for consumption.

100.    These promises, and all others on the labeling and packaging of the Kraft Mac & Cheese Products became part of the basis of the bargain between the parties and thus constituted express warranties.

101.    There was a sale of goods from Defendant to Plaintiffs and the members of the Class.

102.    On the basis of these express warranties, Defendant sold the Kraft Mac & Cheese Products to Plaintiffs and the Class.

103.    Defendant knowingly breached the express warranties by including phthalates in the Kraft Mac & Cheese Products sold to Plaintiffs and the Class.

104.    By letter dated March 6, 2021, Plaintiff Stuve put Defendant on notice of its breach of warranty.  By letter dated April 2, 2021, Plaintiff Nicodemo put Defendant on notice of its breach of warranty.

105.    Plaintiffs and the Class reasonably relied on the express warranties by Defendant.

106.    As a result of Defendant's breaches of its express warranties, Plaintiffs and the Class sustained damages as they paid money for the Kraft Mac & Cheese Products that were not what Defendant represented.

107.    Plaintiffs, on behalf of themselves and the Class, seek actual damages for Defendant's breach of express warranty.

**COUNT VI**
**Breach of Implied Warranty**
**(On Behalf of Plaintiffs and the Nationwide Class)**

108.    Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

109.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

110.    There was a sale of goods from Defendant to Plaintiffs and the Class.

111.    At all times mentioned herein, Defendant manufactured and distributed the Kraft Mac & Cheese Products, and prior to the time such products were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Kraft Mac & Cheese Products were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations

of fact made on the packaging and labels, including that the food was healthy, wholesome, nutritious and safe for consumption.

112.    Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Kraft Mac & Cheese Products.

113.    The Kraft Mac & Cheese Products were not fit for their ordinary use, consumption by people, and did not conform to Defendant's affirmations of fact and promises as they contained (or risk containing) dangerous phthalates in material amounts to a reasonable consumer.

114.    Defendant breached its implied warranties by selling the Kraft Mac & Cheese Products that failed to conform to the promises or affirmations of fact made on the container or label as each product contained (or risked containing) dangerous phthalates.

115.    By letter dated March 6, 2021, Plaintiffs Stuve put Defendant on notice of its breach of implied warranty. By letter dated April 2, 2021, Plaintiff Nicodemo put Defendant on notice of its breach of warranty.

116.    Privity exists because Defendant expressly warranted to Plaintiffs and the Class that the Kraft Mac & Cheese Products were healthy, wholesome, nutritious and safe for consumption, which was untrue as described hereinabove. Defendant knew that consumers such as Plaintiffs and the Class would be the end purchasers of the Kraft Mac & Cheese Products and the target of their marketing. Defendant intended its marketing to be considered by the end purchasers of the Kraft Mac & Cheese Products, including Plaintiffs and the Class. Defendant directly marketed to Plaintiffs and the Class through statements on websites, labeling and packaging.

117.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Kraft Mac & Cheese Products worth less than the price they paid and that they would not have purchased at all had they known of the presence (or risk) of dangerous phthalates.

118.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**COUNT VII**
**Violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act,**
**815 ILCS 505/1, *et seq*.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

119.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

120.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*., prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act." 815 ILCS 505/2.

121.     The ICFA applies to Defendant's acts as described herein because it applies to transactions involving the sale of goods or services to consumers. Defendant is a "person," as defined by 815 ILCS 505/1(c).

122.     Plaintiffs are "consumers," as defined by 815 ILCS 505/1(e), because they purchased Kraft Mac & Cheese Products.

123.     Kraft Mac & Cheese Products are "merchandise," as defined by 815 ILCS 505/1(b).

124. Defendant made false and fraudulent statements, and misrepresented, concealed, and omitted material facts regarding Kraft Mac & Cheese Products, including the misrepresentation that their brand of food products were safe for human consumption and the omission that their brand of food products contained dangerous phthalates.

125. Defendant's misrepresentations and omissions regarding Kraft Mac & Cheese Products constitute deceptive and unfair acts or practices prohibited by the ICFA.

126. Defendant's aforementioned misrepresentations and omissions have the tendency or capacity to mislead and create the likelihood of consumer confusion.

127. Defendant's aforementioned misrepresentations and omissions were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of Kraft Mac & Cheese Products (respectively) to Plaintiffs and the Nationwide Class.

128. Defendant's aforementioned misrepresentations and omissions are unfair business practices because they offend public policy and/or cause substantial injury to consumers.

129. Defendant's conduct alleged herein is deceptive and unlawful because it violated the Illinois Food, Drug, and Cosmetic Act ("IFDCA") as alleged herein. Under the IFDCA, Illinois expressly adopted federal food labeling requirements as its own and has indicated that "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

130. Further, Defendant's claims are misleading to consumers in violation of 21 U.S.C. § 343, which states, "[a] food shall be deemed to be misbranded—If (1) its labeling is false or misleading in any particular."

131.    Indeed, the Illinois Compiled Statutes have incorporated the exact language of the federal Food, Drug, and Cosmetic Act (the "FDCA") by expressly stating, "[a] food is misbranded - (a) If its labeling is false or misleading in any particular."  410 ILCS 620/11.

132.    The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

133.    Also, the Illinois Consumer Fraud and Deceptive Business Practices Act protects consumers when purchasing products, including Defendant's Product, and provides that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . .

815 ILCS 505/2.

134.    Defendant intended that Plaintiffs and class members rely on the above-referenced false statements, misrepresentations, and omissions of material fact in purchasing Kraft Mac & Cheese Products.

135.    Plaintiffs and Class members reasonably relied on Defendant's respective misrepresentations and omissions when they purchased Kraft Mac & Cheese Products.

136.    Had Plaintiffs and Class members been aware of the true facts regarding the presence of toxic phthalates in Kraft Mac & Cheese Products, they would have declined to purchase Kraft Mac & Cheese Products.

137.    Plaintiffs and Class members suffered injuries in fact—i.e., the loss of the money that they paid for Kraft Mac & Cheese Products under the belief that they were safe for human consumption and did not contain dangerous phthalates.

138.     Acting as reasonable consumers, Plaintiffs and Class members could not have avoided the injuries suffered by purchasing Kraft Mac & Cheese Products because they did not have any reason to suspect that those brands of food contained toxic phthalates.  Moreover, the detection of phthalates in food requires rigorous and specialized scientific testing that goes well beyond the level of inquiry a reasonable consumer would make into the issue, and, in any event, such testing was not readily available to Plaintiffs and Class members at the time they purchased Kraft Mac & Cheese Products.

139.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and Class members suffered damages by purchasing Kraft Mac & Cheese Products because they would not have purchased those brands of food products had they known the truth, and they received products that were worthless because they contain (or had a risk of containing) dangerous phthalates.

## COUNT VIII
### Violations of the Illinois Food, Drug and Cosmetic Act, 410 ILCS 620/1, *et seq.*
### (On Behalf of Plaintiffs and the Nationwide Class)

140.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

141.     At all relevant times, the IFDCA was in full force and effect.

142.     The IFDCA prohibits the "manufacture, sale or delivery, holding or offering for sale of any food…that is adulterated or misbranded," the "adulteration or misbranding of any food," and "the delivery or proffered delivery thereof for pay or otherwise."  410 ILCS 620/3 (incorporating 410 ILCS 620/3.1, 410 ILCS 620/3.2, and 410 ILCS 620/3.3).

143.     As alleged herein, Defendant violated the IFDCA by introducing misbranded food containing labeling that is false or misleading.  *See* 410 ILCS 620/11.

- 35 -

144. Further, under the IFDCA, "a food is adulterated if it bears or contains any poisonous or deleterious substance which may render it injurious to health…if the quantity of such substance in such food [would] render it injurious to health." 410 ILCS 620/10.

145. Defendant violated the IFDCA by manufacturing, distributing, marketing, and selling Kraft Mac & Cheese Products (respectively) because the presence of toxic phthalates in those brands of food render them injurious to health.

146. Plaintiffs and Class members reasonably relied on Defendant's respective misrepresentations and omissions when they purchased Kraft Mac & Cheese Products.

147. Acting as reasonable consumers, had Plaintiffs and Class members been aware of the true facts regarding the presence of toxic phthalates in Kraft Mac & Cheese Products, they would have declined to purchase Kraft Mac & Cheese Products.

148. Plaintiffs and Class members suffered injuries in fact—i.e., the loss of the money that they paid for Kraft Mac & Cheese Products under the belief that they were safe for human consumption and did not contain dangerous phthalates.

149. Acting as reasonable consumers, Plaintiffs and Class members could not have avoided the injuries suffered by purchasing Kraft Mac & Cheese Products because they did not have any reason to suspect that those brands of food contained dangerous phthalates. Moreover, the detection of toxic phthalates in food requires rigorous and specialized scientific testing that goes well beyond the level of inquiry a reasonable consumer would make into the issue, and, in any event, such testing was not readily available to Plaintiffs and Class members at the time they purchased Kraft Mac & Cheese Products.

150. As a direct and proximate result of Defendant's violations of the IFDCA, Plaintiffs and Class members suffered damages by purchasing Kraft Mac & Cheese Products

because they would not have purchased those brands of food had they known the truth, and they received a product that was worthless because it contains dangerous phthalates.

151.    Therefore, Plaintiffs and Class members were damaged as a direct result of Defendant's violation of the IFDCA.

152.    A private cause of action is found to exist under a statute where: (1) the plaintiff falls within the class of persons sought to be protected; (2) the plaintiff's injury is one intended to be prevented; (3) the cause of action is consistent with the underlying purpose of the statute; and (4) the private cause of action is necessary to effectuate the purpose of the statute, *i.e.*, a civil remedy is needed.

153.    Plaintiffs and Class members fall within the class of persons sought to be protected by the IFDCA because they unknowingly purchased adulterated food products as a result of Defendants' respective misrepresentations and omissions.  The IFDCA was designed to regulate the manner in which food, drugs, and cosmetics could be manufactured, prepared, advertised, and sold to consumers.  Specifically, section 620/10 of the IFDCA was designed to prohibit food manufacturers and sellers from selling food to consumers which contain unsafe levels of "any poisonous or deleterious substance which may render it injurious to health."  The sale of adulterated food is prohibited under the IFDCA so that consumers, such as Plaintiffs and Class members, do not purchase and/or ingest foods that are be injurious to their health.

154.    Plaintiffs' and Class members' common injury is one intended to be prevented by the IFDCA.  Section 620/10 of the IFDCA prohibits food manufacturers and sellers from selling food to consumers which contain unsafe levels of "any poisonous or deleterious substance which may render it injurious to health."  The sale of adulterated food is prohibited under the

IFDCA so that consumers, such as Plaintiffs and Class members, do not purchase and/or ingest foods that are injurious to their health.

155.     Granting Plaintiffs and Class members a private right of action under the IFDCA is consistent with the underlying purpose of the IFDCA.  The underlying purpose of section 620/10 of the IFDCA is to prevent consumers from purchasing and/or ingesting foods that will be injurious to their health.  Allowing Plaintiffs and Class members to hold Defendant liable for its violations of the IFDCA is consistent with that purpose.

Granting Plaintiffs and Class members a private right of action under the IFDCA is necessary to effectuate the purpose of the IFDCA because the statute would be rendered meaningless if it could not be enforced.  There would be no incentive keeping food manufacturers and sellers from selling adulterated food products to consumers if they could not be held liable to consumers for their actions.

## V.     REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court:

a)     Certify the Nationwide Class, including the Florida and New York Subclasses, and appoint Plaintiffs and their counsel to represent the Nationwide Class and the Florida and New York Subclasses;

b)     Find that Defendant engaged in the unlawful conduct as alleged herein;

c)     Enjoin Defendant from engaging in such conduct and order any further injunctive relief as appropriate;

d)     Enter a monetary judgment in favor of Plaintiffs and the Class, including the Florida and New York Subclasses, to compensate them for the injuries suffered, together

with pre-judgment and post-judgment interest, punitive damages, and penalties where appropriate;

e)     Require Defendant to rectify all damages caused by its misconduct;

f)     Award Plaintiffs and the Class, including the Florida and New York Subclasses, reasonable attorneys' fees and costs of suit, as allowed by law; and

g)     Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: April 6, 2021             Respectfully submitted,

*/s/ Nicholas Lange*
Nicholas Lange, Esq.
**CARLSON LYNCH LLP**
111 Washington Street, Suite 1240
Chicago, Illinois 60602
Phone: (312) 750-1265
Fax: (773) 598-5609
Email: nlange@carlsonlynch.com

Janine L. Pollack, Esq.
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Phone: (212) 899-1760
Fax: (332) 206-2073
Email: jpollack@calcaterrapollack.com

David J. George, Esq.
Brittany Brown, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email : EService@4-justice.com

Lori G. Feldman, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-justice.com
Email : EService@4-justice.com

Rebecca A. Peterson, Esq.
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Phone:  (612) 339-6900
Fax:  (612) 339-0981
Email:  rapeterson@locklaw.com

*Counsel for Plaintiffs*