## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| GABRIELLE STUVE, JESSICA NICODEMO, KELLY TARANTINO, MICHELLE FRANCIONE, LANA MOSKOWITZ, AARON CLARKE, and MICHELLE deVERA, on behalf of themselves and all others similarly situated, | ) Case No.1:21-CV-01845 <br> ) <br> ) <br> )  The Hon. Rebecca R. Pallmeyer <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| THE KRAFT HEINZ COMPANY a/k/a KRAFT HEINZ FOODS COMPANY, | ) <br> ) <br> ) |
| Defendant. |  |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Gabrielle Stuve, Jessica Nicodemo, Kelly Tarantino, Michelle Francione, Lana Moskowitz, Aaron Clarke and Michelle deVera ("Plaintiffs"), by and through their counsel, on their own behalf and on behalf of all others similarly situated, bring this Consolidated Class Action Complaint against Defendant The Kraft Heinz Company a/k/a Kraft Heinz Foods Company ("Kraft" or "Defendant") and allege the following facts in support of their claims against Defendant based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## I.      INTRODUCTION

1.      The ubiquitous boxed macaroni and cheese has long been a staple meal in many U.S. households for children and adults alike.  Defendant has profited from this with massive sales of its popular Kraft boxed macaroni and cheese products (the "Kraft Mac & Cheese Products" or the "Products").  Over a million boxes of Kraft Mac & Cheese Products are sold every day.[1]  But Defendant has improperly and misleadingly packaged and marketed its Products to reasonable consumers, like Plaintiffs, regarding the presence or risk of "ortho-phthalates," also known as "phthalates."  Phthalates are harmful chemicals, and their consumption carries a risk of adverse health impacts.  Defendant makes material misrepresentations on the packaging of the Products that lead a reasonable consumer to believe the Products are wholesome, safe, healthy, and free from dangerous and artificial substances like phthalates.  In fact, Defendant represents that the Products have no "artificial" flavors, preservatives, or dyes and that the cheese covering the macaroni is "goodness."  But given the presence or risk of phthalates, a toxic synthetic artificial

---

[1]      *See*      https://news.kraftheinzcompany.com/press-releases-details/2022/Kraft-Macaroni-and-Cheese-Is-Changing-Its-Name-and-Iconic-Blue-Box-Introducing...-Kraft-Mac--Cheese/default.aspx. (last accessed Aug. 16, 2022).  Kraft reportedly changed the name of the Products to "Kraft Mac & Cheese," and it claims the new packaging will appear on shelves in or around August 2022.  *See id.*

substance, in the Products, those representations are materially false and misleading. Moreover, Defendant omits from the Products' packaging that they contain (or are at a risk of containing) phthalates.

2.      There is scientific evidence linking phthalates exposure with harmful health outcomes and dairy has been found to be a major source of exposure. For most people, food is generally the greatest source of exposure to phthalates, and fattier and more processed foods tend to have the highest phthalate levels. The cumulative effect of phthalates is concerning, particularly because studies show that one in five American adults eats 81 percent of their calories from ultra-processed foods, including foods such as powdered macaroni and cheese products.

3.      Phthalates are classified as endocrine-disrupting chemicals and have been linked to adverse health effects. For example, studies have found that in adult populations there is an association between phthalate exposure and markers of testicular function in men, particularly decreased semen quality. There is also evidence linking endometriosis in women with high phthalate metabolite levels and increases in waist circumference and body mass index ("BMI") have been linked to phthalate exposure in men and adolescent and adult females. Associations between children's exposure to phthalates and the risk of asthma, allergies and bronchial obstruction have also been scientifically identified. Kraft Mac & Cheese Products are regularly consumed by America's children.

4.      Scientific findings have also shown that pre-natal exposure to phthalates is highly dangerous to the fetus and leads to multiple harms once the children are born, including neurodevelopmental problems such as ADHD, anti-social behavior, learning and memory problems, and genital birth defects in boys. In fact, according to a press release dated February 19, 2021, announcing a recent peer-reviewed study published in the American Journal of Public

Health, "[p]renatal exposure to the widely used plasticizer chemicals called phthalates can lead to learning, attention and behavioral disorders in children." The press release noted that the "study reviewed data from the past decade measuring prenatal exposure to phthalates or environmental estimates of exposures from 11 countries or territories. It found consistent associations between phthalates and behaviors typically linked to ADHD and impaired cognitive development, including lower IQ, reduced psychomotor development and impaired social communication." In 2008, Congress banned several phthalates from children's toys and childcare articles.

5.     Good manufacturing practices do not require the use of phthalates in processing and packaging the Products. Defendant has been aware for numerous years that its Products contain (or risk containing) phthalates but has failed to take sufficient steps to ensure these toxins are not introduced into the Products despite that removal is possible using practical and good manufacturing practices.

6.     Reasonable consumers, like Plaintiffs, trust manufacturers like Defendant to sell food that is free from harmful toxins, contaminants, and chemicals. Reasonable consumers, like Plaintiffs, certainly expect the food they eat and feed their family to be free from phthalates, substances known to have adverse health consequences. If such substances are contained in, or risk being contained in, the food sold by a manufacturer, reasonable consumers expect that this will be disclosed on the products' packaging so that they can have full and fair information to decide for themselves whether they want to consume the product and the amounts they want to consume of the product.

7.     Consumers lack the scientific knowledge necessary to determine whether the Products do in fact contain (or have a risk of containing) phthalates, or to ascertain the true nature of the quality of the Products. Reasonable consumers therefore must and do rely on Defendant to

be transparent and properly disclose on the packaging all material information regarding the Products and their safety and not to misrepresent the nature and qualities of the Products. However, public reports and articles, including in the recesses of Defendant's own website, reveal that the Kraft Mac & Cheese Products contain (or are at risk of containing) phthalates and that Defendant has been well aware of this fact since at least 2017 if not earlier.

8.      Despite this, the consumer-facing messages on the Products' packaging that Defendant chose failed to make any reference to phthalates.  Indeed, nowhere on the Products' packaging is there any disclosure of the inclusion (or possible inclusion) of phthalates.

9.      Phthalates are toxic industrial chemicals and Kraft knows that its customers consider the presence of phthalates in the Products to be important information they would want to know.  In the "Frequently Asked Questions" section of the kraftmacandcheese.com website, the very first question states, "Should I be concerned about food and phthalates?"[2]  In the response, Kraft admits that there were phthalates found in testing performed on its Products.[3] Acknowledging that customers have inquired about phthalates in the Products and their safety, Defendant states, "We take your questions about phthalates and food safety and quality very seriously because we know moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family."[4]  Defendant also acknowledges in the response that phthalates are found in many food products and states that it is seeking to learn how "phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them."[5]  The statements regarding the presence or risk of phthalates in its Products and their safety on the

---

[2] https://www.kraftmacandcheese.com/faq (last accessed Aug. 16, 2022).
[3] *Id.*
[4] *Id.*
[5] *Id.*

kraftmacandcheese.com website in the Frequently Asked Questions section show that Defendant knew this information is material to a reasonable consumer. Yet Kraft chose to omit any information about the presence (or risk) of phthalates in the Kraft Mac & Cheese Products on the Product's packaging.

10. Recent survey data further confirms that consumers of boxed macaroni and cheese consider it important if there are phthalates (or the risk of phthalates) in the products even in small amounts. Plaintiffs' counsel conducted a survey of 400 adult consumers who bought boxed macaroni and cheese within the prior six months. The vast majority (approximately 89.5%) answered that the presence or risk of even a small amount of phthalates in the boxed macaroni and cheese would be either important or very important to their purchasing decisions.

11. Plaintiffs bring this class action against Defendant for deceptive business practices, as well as for breach of warranty and unjust enrichment, due to the presence (or risk) of dangerous phthalates in the Kraft Mac & Cheese Products, including those that Plaintiffs purchased. Plaintiffs seek injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of all such substances in Defendant's marketing, advertising, and packaging; (ii) requiring testing for such substances; and (iii) restoring monies to Plaintiffs and the members of the proposed Class. Through this action, Plaintiffs assert claims for breach of warranty and unjust enrichment, and for violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; Florida Deceptive and Unfair Trade Practices Act § 501.201; the New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, and New York Consumer Law for False Advertising, N.Y. Gen Bus. Law § 350; the Connecticut Unfair Trade Practices Act, Conn. Gen.

Stat. § 42-110b; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*; the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*, and Massachusetts G.L. c. 266 § 91; the Michigan Consumer Fraud Act, Mich. Stat. § 445.901 *et seq.*; the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68-325F.70; the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and the Washington Unfair Business Practices – Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq.* (collectively the "State Statutes"), seeking monetary damages, declaratory and injunctive relief, and all other relief as authorized in equity or by law.

## PARTIES

### *Plaintiffs*

12.     Plaintiff Gabrielle Stuve is a citizen and resident of the State of New York, residing in Hauppauge, New York.  During the applicable statute of limitations period, Plaintiff Stuve purchased in New York Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products.  She paid up to the regular retail price for the Products.  Plaintiff Stuve saw the representations at issue on the packaging and relied on them in making her purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did.  As a result of Defendant's deceptive conduct as alleged herein, Plaintiff Stuve was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised.  Plaintiff Stuve paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions.  Plaintiff Stuve would

purchase the Products again if Defendant (i) eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

13.     Plaintiff Jessica Nicodemo is a citizen and resident of the State of Florida, residing in Branford, Florida. During the applicable statute of limitations period, Plaintiff Nicodemo purchased in Florida Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products. She paid up to the regular retail price for the Products. Plaintiff Nicodemo saw the representations at issue on the packaging and relied on them in making her purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff Nicodemo was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff Nicodemo paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff Nicodemo would purchase the Products again if Defendant (i) eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

14.     Plaintiff Kelly Tarantino is a citizen and resident of the State of New York, residing in Rockville Center, New York. During the applicable statute of limitations period, Plaintiff Tarantino purchased in New York Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products. She paid up to the regular retail price for the Products. Plaintiff Tarantino saw the representations at issue on the packaging and

relied on them in making her purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff Tarantino was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff Tarantino paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff Tarantino would purchase the Products again if Defendant (i) eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

15. Plaintiff Michelle Francione is a citizen and resident of the Commonwealth of Massachusetts, residing in Andover, Massachusetts. During the applicable statute of limitations period, Plaintiff Francione purchased in Massachusetts Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products. She paid up to the regular retail price for the Products. Plaintiff Francione saw the representations at issue on the packaging and relied on them in making her purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff Francione was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff Francione paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff Francione would purchase the Products again if Defendant (i)

eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

16. Plaintiff Lana Moskowitz is a citizen and resident of the State of Connecticut, residing in Stamford, Connecticut. During the applicable statute of limitations period, Plaintiff Moskowitz purchased in Connecticut Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products. She paid up to the regular retail price for the Products. Plaintiff Moskowitz saw the representations at issue on the packaging and relied on them in making her purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff Moskowitz was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff Moskowitz paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff Moskowitz would purchase the Products again if Defendant (i) eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

17. Plaintiff Aaron Clarke is a citizen and resident of the State of California, residing in San Francisco, California. During the applicable statute of limitations period, Plaintiff Clarke purchased in California Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products. He paid up to the regular retail price for the Products. Plaintiff Clarke saw the representations at issue on the packaging and relied on them in

making his purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or he would have paid less than he did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff Clarke was injured when he paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff Clarke paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff Clarke would purchase the Products again if Defendant (i) eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

18.     Plaintiff Michelle deVera is a citizen and resident of the State of California, residing in Fremont, California. During the applicable statute of limitations period, Plaintiff deVera purchased in California Kraft Mac & Cheese Products that were manufactured and produced by Defendant that contained (or were at risk of containing) undisclosed dangerous phthalates, including the Original Flavor version of the Products. She paid up to the regular retail price for the Products. Plaintiff deVera saw the representations at issue on the packaging and relied on them in making her purchase, was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff deVera was injured when she paid the purchase price and/or a price premium for the Products that did not deliver what Defendant promised. Plaintiff deVera paid the above sum in reliance that the packaging of the Products was accurate and that there were no material omissions. Plaintiff deVera would purchase the Products again if Defendant (i) eliminated the phthalates; and/or (ii) undertook corrective changes to the packaging. Damages can be calculated through expert testimony at trial.

*Defendant Kraft*

19.     Defendant Kraft is a Delaware corporation with co-headquarters in Chicago, Illinois and Pittsburgh, Pennsylvania.  On the back of the box of the Products, it states "Kraft Heinz Foods Company Chicago, IL 60601."

20.     Kraft operates a factory in Champaign, Illinois with some 900 employees on 32 acres that makes half of the Kraft macaroni and cheese sold in the United States.[6]

21.     Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells Kraft Mac & Cheese Products throughout the United States, including California, Florida, New York, Connecticut, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey and Washington.

22.     Public reports indicate that Kraft is the largest seller of macaroni and cheese products in the United States.[7]

23.     Defendant's website is https://www.kraftmacandcheese.com/.

24.     During the relevant period, Defendant showed at least 18 "Blue Box" Kraft Mac & Cheese Products on its website.[8]

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse

---

[6] *See* https://www.dallasnews.com/business/2020/04/09/we-cant-make-enough-mac-and-cheese-processed-food-is-undergoing-a-renaissance/ (last accessed Aug. 16, 2022).
[7] *See* https://finance.yahoo.com/news/pepsi-co-will-take-aim-at-kraft-mac-cheese-dominance-this-fall-160443211.html (last accessed Aug. 16, 2022).
[8] Those include the following: Kraft Original Flavor Macaroni & Cheese Dinner; Kraft Three Cheese Macaroni & Cheese Dinner; Kraft Macaroni & Cheese Dinner Value Size; Kraft Original Macaroni & Cheese Dinner Family Size; Kraft Original Flavor Macaroni & Cheese Dinner 4 pack; Kraft Thick & Creamy Macaroni & Cheese Dinner; Kraft Paw Patrol Shapes Macaroni & Cheese

state citizenship from Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

26. The Northern District of Illinois has personal jurisdiction over Defendant as Defendant conducts substantial business in this District and has its co-headquarters located in the District.

27. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant has its co-headquarters located in the District and because a substantial part of the events giving rise to the conduct alleged in this Complaint occurred in, were directed to, and emanated from this District.

## II. FACTUAL ALLEGATIONS

### Phthalates Are Toxic Synthetic Chemicals

28. Phthalates are synthetic chemicals used to make plastics flexible. They are toxins that enter food during processing and packaging, the inclusion (or risk) of which is avoidable by the food manufacturer based on its chosen manufacturing methods. The cheese powder in boxed macaroni and cheese products is particularly problematic because it is a processed food substance and the phthalates escape from food contact materials such as processing equipment and food packaging materials into the cheese powder.

29. In 2017, the Coalition for Safer Food Processing and Packaging (the "Coalition"), a group of nonprofit consumer health and food safety advocacy organizations, published a study

---

Dinner; Kraft Unicorn Shapes Macaroni & Cheese Dinner; Kraft Spirals Macaroni & Cheese Dinner; Kraft White Cheddar Macaroni & Cheese Dinner; Kraft Gluten Free Macaroni & Cheese Dinner; Kraft Paw Patrol Ready Race Rescue Shapes Macaroni & Cheese Dinner; Kraft Macaroni & Cheese Cauliflower Original; Kraft Original Flavor Whole Grain Macaroni & Cheese Dinner; Kraft Macaroni & Cheese Frozen II Shapes Dinner; Kraft Thick 'N Creamy Macaroni & Cheese Dinners; Kraft Original Cheddar Macaroni & Cheese Dinner with White Bean Protein; and Kraft Original Flavor Macaroni & Cheese Dinner Wrapped.

(the "Study") that tested, among other cheese products, cheese powder in ten varieties of macaroni and cheese.[9] The Study concluded that phthalates were found in all ten of the varieties and that on average the phthalate levels in the ten macaroni and cheese powders tested were more than four times higher than in the 15 natural cheeses tested, which were block cheese, string cheese, cottage cheese, and shredded cheese.[10] The Study also concluded that "DEHP, the most widely restricted phthalate, was found more often and at a much higher average concentration than any other phthalate, among all the cheese products tested."[11]

30.    Although the Study did not publicly identify the brands for which the cheese powder was tested, given the results of the Study, the Coalition wrote a public letter dated June 14, 2017, to the Chief Executive Officer of Kraft, asking it, as the leading U.S. seller of macaroni and cheese products, to "eliminate toxic industrial chemicals known as *ortho*-phthalates from your food products."[12] According to the letter, the Coalition stated that it had detected phthalates in Kraft's products through the testing and wanted to meet with Kraft to discuss this as it was planning a public outreach campaign.[13] The letter stated that pregnant women and young children are the "most vulnerable groups" and that food is "often the number one source of phthalates

---

[9] *See* http://kleanupkraft.org/data-summary.pdf (last accessed Aug. 16, 2022).

[10] *See* http://kleanupkraft.org/PhthalatesLabReport.pdf (last accessed Aug. 16, 2022).

[11] http://kleanupkraft.org/data-summary.pdf (last accessed Aug. 16, 2022). *See also* Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalates and Phthalate Alternatives, July 2014, U.S. Consumer Product Safety Commission, Directorate for Health Sciences, available at https://www.cpsc.gov/s3fs-public/CHAP-REPORT-With-Appendices.pdf (last accessed Aug. 16, 2022), at 90 (CPSC states that regarding DEHP, which is not allowed in children's toys and child care products at levels greater than 0.1%, "[a] complete dataset suggests that exposure to DEHP in utero can induce adverse developmental changes to the male reproductive tract. Exposure to DEHP can also adversely affect many other organs such as the liver and thyroid.").

[12] http://kleanupkraft.org/kraft-phthalates-6-14-17.pdf (last accessed Aug. 16, 2022).

[13] *See id.*

exposure."[14]  Fatty foods, including dairy products, appear to be "the greatest contributor of dietary exposure to phthalates," according to the letter.[15]  The Coalition explained and cited the scientific findings to date showing that pre-natal exposure to phthalates is highly dangerous to the fetus and leads to multiple harms once the children are born, including neurodevelopmental problems such as ADHD, anti-social behavior, learning and memory problems, and genital birth defects in boys.[16]  Moreover, the letter stated that cumulative exposure to phthalates is of particular concern.[17]  The letter noted that "safer alternatives are already commercially available for many uses of phthalates."[18]

31.     In a public statement dated July 20, 2017, following the Coalition's letter to Kraft's CEO, the Coalition further noted: "This serious public health risk stems from daily exposure to phthalates from *all* sources combined.  This is what's known as an unacceptable 'cumulative risk.' Kraft asserts that the amount of phthalates in the products we tested is many times 'lower than levels that scientific authorities have identified as acceptable.'  What Kraft didn't say is that the only acceptable levels that exist apply to the *total* daily intake of phthalates from *all* sources combined, *not* from any single product.  With phthalates found in some dairy products, baked goods, oils, infant formula, fast food, consumer products, house dust – together, these daily

---

[14] *Id.*
[15] *Id.*
[16] *See id.*
[17] *See id.*
[18] *Id.*

exposures add up to too much."[19]   The letter further noted that the ten macaroni and cheese powders that were tested "had the highest levels of phthalates of the product items we tested."[20]

32.     In the Frequently Asked Questions portion of Defendant's website, Kraft acknowledged the Study, that its Kraft Mac & Cheese Products do contain (or risk containing) phthalates, and that it is important to "reduce or eliminate" such phthalates.[21]  Yet, despite its knowledge since at least 2017 that its Products contain (or risk containing) phthalates, Kraft never disclosed anything about phthalates on its Products' packaging.

33.     The Food and Drug Administration ("FDA") has not set a standard for acceptable levels of phthalates in food products.

34.     Researchers have also shown that, unlike other chemicals, phthalates appear to have more serious effects at lower levels than at higher levels.  Although it is typically assumed that the higher the dose or exposure, the greater the harm, endocrine disruptors are different.[22]

35.     A key problem posed by phthalates is that hormones can increase the risk of some cancers, regardless of whether those hormones are natural or synthetic.  Too much or too little of a hormone can be harmful.  For example, research shows that animals exposed to phthalates are more likely to develop liver cancer, kidney cancer, and male reproductive organ damage.  Studies also show associations between children's exposure to phthalates and the risk of asthma, allergies, and bronchial obstruction.[23]

---

[19] https://www.kleanupkraft.org/CoalitionStatement7-20.pdf (last accessed Aug. 16, 2022) (emphasis in original).
[20] *Id.*
[21] https://www.kraftmacandcheese.com/faq (last accessed Aug. 16, 2022).
[22] https://www.center4research.org/phthalates-childrens-products/ (last accessed Aug. 16, 2022).
[23] *Id.*

36.     Researchers at Mount Sinai also found a link between obesity and phthalates. They found that among overweight girls ages six to eight years old, the higher the concentration of certain phthalates in their urine, the higher their BMI. A study among Danish children ages four to nine years old found that the higher the concentration of phthalates, the shorter the child.[24]

37.     The cumulative effect of phthalates is particularly concerning, especially since studies show that one in five American adults eats 81 percent of their calories from ultra-processed foods, including Kraft powdered macaroni and cheese products.[25] In a letter dated March 11, 2020, addressed to the Chief Executive Officer of The Kraft Heinz Company, which included signatories from disability organizations from 22 states, the chair of Harvard's Department of Environmental Health, and public health experts from several additional universities, the signatories noted that the "National Academy of Sciences estimates that environmental factors, including toxic chemicals, cause or contribute to at least a quarter of learning and developmental disabilities in American children," and that Kraft should lead the industry "by ensuring its supply chain is free of phthalates."[26] The letter further stated that "[s]cientific studies show that daily cumulative exposure to phthalates poses an unacceptable health risk to pregnant women and young children. Elevated phthalate exposure has been found to interfere with the reproductive functions of both men and women and impede brain development in children. For most people, the food we eat is the greatest exposure pathway to phthalates. Foods that are fattier and more processed tend to have the highest phthalate levels."[27]

---

[24] Id.
[25] See, e.g., https://www.ewg.org/news-and-analysis/2019/09/kraft-heinz-rejects-effort-get-phthalates-out-mac-and-cheese (citing https://pubmed.ncbi.nlm.nih.gov/30820487/) (last accessed Aug. 16, 2022).
[26] https://www.toxicfreefood.org/wp-content/uploads/LDA-Sign-On-Letter-to-Kraft-Heinz-3.11.20.pdf (last accessed Aug. 16, 2022).
[27] Id.

38. Additional studies indicate and/or discuss the harmful and dangerous effects of phthalates. For example, a study in 2014 sought to identify the primary foods associated with increased exposure to phthalates. The study stated, "Given the increasing scientific evidence base linking phthalate exposure with harmful health outcomes, it is important to understand major sources of exposure."[28] Dairy was found to be one of those sources. According to the study, phthalates "are classified as endocrine-disrupting chemicals and have been linked to adverse health effects particularly in relation to early life exposure." The study further noted that in "adult populations, various epidemiological studies support an association between phthalate exposure and markers of testicular function in men, particularly decreased semen quality." It also noted "evidence linking endometriosis in women with high phthalate metabolite levels" and that "[i]ncreases in waist circumference and [BMI] have been linked to DEHP, BzBP, DBP and DEP exposure in men and DEP exposure in adolescent and adult females."[29]

39. Another study in 2014, which "examined the temporal trends in urinary concentrations of phthalates metabolites in the general U.S. population," also indicated that such testing was important due to "the scientific community and public's concern over phthalate toxicity," including the banning of the use of certain phthalates in toys, food-containing materials, and cosmetics in the European Union, as well as toys and other child care articles in the U.S.[30] The study noted: "Human epidemiologic studies have reported associations between exposure to

---

[28] Serrano SE, Braun J, Trasande L, Dills R, Sathyanarayana S (2014), Phthalates and diet: a review of food monitoring and epidemiology data. Environmental Health 13:43, available at https://ehjournal.biomedcentral.com/articles/10.1186/1476-069X-13-43 (last accessed Aug. 16, 2022).
[29] Id.
[30] Zota AR, Calafat AM, Woodruff TJ (2014) Temporal Trends in Phthalate Exposures: Findings from the National Health and Nutrition Examination Survey, 2001-2010 Environmental Health Perspectives 122(3):235-241, https://ehp.niehs.nih.gov/doi/10.1289/ehp.1306681 (last accessed Aug. 16, 2022).

DnBP, BBzP, and some other phthalates and adverse male reproductive outcomes, including reduced sperm quality, increased sperm DNA damage, and altered male genital development (Hauser et al. 2006, 2007; Meeker et al. 2009; Swan et al. 2005). Other studies have reported associations between gestational exposures to phthalates, including DEP, DnBP, BBzP, and DEHP, and outcomes suggesting impaired behavioral development (Braun et al. 2013; Engel et al. 2009; Swan et al. 2010; Whyatt et al. 2012)."[31]

40. According to a press release dated February 19, 2021, announcing a recent peer-reviewed study published in the American Journal of Public Health, "[p]renatal exposure to the widely used plasticizer chemicals called phthalates can lead to learning, attention and behavioral disorders in children."[32] The press release noted that the "study reviewed data from the past decade measuring prenatal exposure to phthalates or environmental estimates of exposures from 11 countries or territories. It found consistent associations between phthalates and behaviors typically linked to ADHD and impaired cognitive development, including lower IQ, reduced psychomotor development, and impaired social communication."[33]

41. According to public reports, "[r]esearchers have found that even low levels of exposure to certain phthalates can lead to hormonal disruption and reproductive harm, as well as lasting damage in children's brain development."[34] Researchers found that children in intensive care units who were exposed to the phthalates through plastic tubing and catheters had 18 times as much of the chemicals in their blood compared to children who had not spent time in the ICU.

---

[31] *Id.*

[32] *See* https://www.ewg.org/release/study-shows-mounting-evidence-plasticizer-chemicals-harm-fetus (last accessed Aug. 16, 2022).

[33] *Id.*

[34] https://www.nrdc.org/experts/nrdc/court-retains-ban-toxic-phthalate-chemicals-childrens-products-and-toys (last accessed Aug. 16, 2022); https://www.center4research.org/phthalates-childrens-products/ (last accessed Aug. 16, 2022).

Four years later, the children who had been exposed to the phthalates had more problems with attention and motor coordination. The researchers found that the phthalates caused these problems regardless of medical complications or treatments.[35]

42. Columbia University researchers discovered that three-year-olds with high prenatal exposure to two types of phthalates were more likely to have motor delays. They also reported that three phthalates were linked to certain behavior problems in three-year-olds. One phthalate in the study was linked to lower mental development in girls.[36]

43. In 2008, Congress banned several phthalates from children's toys and childcare articles.[37] Previously, in 2005, the European Parliament endorsed a ban on certain types of phthalates used in children's toys and other childcare products.[38] Fourteen other countries, including Japan, Argentina, and Mexico, had also banned phthalates from children's toys prior to the U.S.[39]

## Defendant's Knowledge Regarding the Importance to Consumers of the Presence or Risk of Phthalates

44. Defendant makes misrepresentations and omissions on its packaging for the Products despite being fully aware of the presence (or risk) in the Products of phthalates since at

---

[35] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed Aug. 16, 2022).

[36] *See id.*

[37] *See* https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Phthalates-Information/ (last accessed Aug. 16, 2022); *see also* Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalates and Phthalate Alternatives, July 2014, U.S. Consumer Product Safety Commission, Directorate for Health Sciences, available at https://www.cpsc.gov/s3fs-public/CHAP-REPORT-With-Appendices.pdf (last accessed Aug. 16, 2022).

[38] *See, e.g.*, https://www.nbcnews.com/id/wbna8473765 (last accessed Aug. 16, 2022).

[39] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed Aug. 16, 2022).

least 2017, if not earlier, as described above.  This is particularly pertinent here since Kraft now promotes eating Kraft Mac & Cheese Products for every meal, including breakfast.[40]

45.     Kraft knows that its customers consider the question of phthalates in regard to food to be important information they would want to know.  In the "Frequently Asked Questions" section of the kraftmacandcheese.com website, the very first question states, "Should I be concerned about food and phthalates?"[41]  The inclusion of this question in the "Frequently Asked Questions" section demonstrates that it is a topic of importance to Kraft's consumers.  In the response, Kraft admits that there were phthalates found in testing performed on its Products.[42] Acknowledging that customers have inquired about phthalates in the Products and their safety, Defendant further states, "We take your questions about phthalates and food safety and quality very seriously because we know moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family."[43]  The statements regarding phthalates in its Products and their safety on the kraftmacandcheese.com website in the Frequently Asked Questions section are thus an admission by Defendant that it is information a reasonable consumer would consider important. Yet no information about the presence (or risk) of phthalates in the Kraft Mac & Cheese Products is disclosed anywhere on the packaging.

46.     Defendant also states in its response to the Frequently Asked Question "Should I be concerned about food and phthalates?" that it does "not add phthalates to Kraft Mac &

---

[40]  *See*  https://news.kraftheinzcompany.com/press-releases-details/2020/Its-Official-Kraft-Mac--Cheese-Is-Approved-for-Breakfast/default.aspx  (Aug.4,  2020)  (last  accessed  Aug.  16,  2022) (Kraft mac and cheese is "part of a balanced breakfast"; brand manager for Kraft in Chicago stated, "As a brand loved by the entire family, we've learned Kraft Mac & Cheese isn't just for dinner…. A Kraft Mac & Cheese breakfast is a win-win for families at a time when they need all the wins they can get.").
[41] https://www.kraftmacandcheese.com/faq (last accessed Aug. 16, 2022).
[42] *Id.*
[43] *Id.*

Cheese."[44]  Yet Defendant states that it is seeking to learn how "phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them."[45]  Thus, as acknowledged by Kraft, phthalates are "introduced" into its Products during the manufacturing process; yet it fails to inform consumers on its packaging for the Products that this manufacturing process that it has chosen to employ results in the presence (or risk) or phthalates in the Products. This omission prevents consumers from obtaining full and complete information regarding the total amount of phthalates they are ingesting or otherwise being exposed to in a single day and over the course of time, and thus inhibits their decision-making as to their cumulative level of phthalates.  As Kraft states in its response, "[t]he presence of phthalates is widespread and can be found in a variety of food and personal care products."[46]  This underscores the reason why the presence (or risk) of phthalates in any one given product is a critical piece of information for consumers — so they can assess the total amounts from all sources and make rational and fully informed decisions about the total amounts of phthalates they want to consume (or have their children consume) or be exposed to at any given time.  As noted above, one of the significant concerns regarding phthalates is its cumulative effect from all sources over time.

47.     Kraft's inclusion on its website of the foregoing information about phthalates in its Products in its Frequently Asked Questions section evidences that its customers consider it to be important (and that Kraft is aware of this).  Recent survey data further confirms that consumers of boxed macaroni and cheese consider it important if there are phthalates (or the risk of phthalates) in the products even in small amounts.  Plaintiffs' counsel conducted a survey of 400 adult consumers who bought boxed macaroni and cheese within the prior six months.  The vast majority

---

[44] *Id.*
[45] *Id.*
[46] *Id.*

(approximately 89.5%) answered that the presence or risk of even a small amount of phthalates in the boxed macaroni and cheese would be either important or very important to their purchasing decisions.

48.     Kraft Mac & Cheese Products are available at numerous retail and online outlets. However, as discussed above, Defendant fails to disclose on its packaging that Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates.  Defendant intentionally omitted disclosure on its packaging of these dangerous chemicals to induce and mislead reasonable consumers to purchase its Kraft Mac & Cheese Products.  Moreover, Defendant makes false and misleading statements on the Products' packaging that leads reasonable consumers to believe that the Products are wholesome, safe, healthy, and free from "artificial" substances and toxins when Defendant knows this is not true.

**Defendant's Packaging Misleads Reasonable Consumers**

49.     Defendant is well-aware that consumers, including Plaintiffs and the putative class, lack the meaningful ability to test or independently ascertain or verify whether a product contains phthalates or other unsafe and unhealthy substances, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain on the Products' packaging.  However, Defendant makes material misrepresentations on the Products' packaging, as described more fully below, and omits from the Products' packaging that they contain (or are at risk of containing) phthalates.

50.     Defendant makes statements on the Products' packaging that create the overall impression, and lead reasonable consumers to believe, that the Products are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances likes phthalates.  In fact, the packaging for the Products contains no mention regarding the presence or risk of phthalates.

This is especially troubling in light of Defendant's marketing towards children, which includes certain boxes having Disney's Frozen, Paw Patrol, unicorns, and other similar types of marketing.

51.     Indeed, Defendant's packaging for Kraft Mac & Cheese Products represents and promises that the Products are "The Taste You Love" as they have "NO Artificial Flavors" and "NO Artificial Preservatives" and "NO Artificial Dyes." These representations and promises lead reasonable consumers to believe that the Products are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances, like phthalates.

52.     But phthalates are toxic, "artificial" industrial chemicals that are far from wholesome, safe, or healthy. While Defendant prominently represents on the front of the package that there are "NO" "artificial" flavors, preservatives, or dyes in the Kraft Mac & Cheese Products, the Products contain (or risk containing) dangerous and harmful phthalates, an artificial substance.

53.     Defendant's packaging also represents that inside the box "you'll find happy childhood memories, tons of blissful smiles, and our delicious elbow macaroni waiting to be covered with gooey, cheesy goodness." Representing that the cheese is "goodness" leads reasonable consumers to believe that the Products are wholesome, safe, and healthy and do not contain dangerous chemicals, like phthalates. However, as demonstrated above, the cheese covering the macaroni is not "goodness." Instead, it contains (or risks containing) dangerous and unhealthy phthalates.

54.     None of these promises, statements, and representations on the consumer-facing packaging of the Products is required by federal or state law, but rather all were chosen voluntarily by Defendant to advertise and represent the Products as wholesome, safe and healthy to consumers and to lead reasonable consumers to believe that nothing toxic or "artificial" is contained in the Products.

55.    On the "Frequently Asked Questions" section of the kraftmacandcheese.com website, under the question, "Should I be concerned about food and phthalates?," Defendant states that it "know[s] moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family."[47]  Thus, it acknowledges reliance by its customers on its representations and omissions on the packaging that the Kraft Mac & Cheese Products are wholesome, safe and healthy to eat and free from dangerous and/or artificial chemical substances.  Defendant further acknowledges that phthalates are found in many food products and states that Defendant is working to learn how "phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them."[48]  This is an admission that Defendant could remove the phthalates using good manufacturing practices.

56.    While the statements on the kraftmacandcheese.com website are buried in the Frequently Asked Questions section, they are nonetheless an admission by Defendant that it is information a reasonable consumer would consider important; namely, that consumers want a product that is wholesome, safe, and healthy, and free from artificial substances, including dangerous and harmful synthetic toxins like phthalates.

57.    The Products' affirmative misrepresentations are illustrated by the pictures shown below:

---

[47] https://www.kraftmacandcheese.com/faq (last accessed Aug. 16, 2022).
[48] *Id.*





58.     Defendant's website confirms the misrepresentations made to consumers, including

Plaintiffs and the Class, on the packaging of Kraft Mac & Cheese Products that such Products are

wholesome, safe, and healthy, and free from artificial ingredients and/or additives, including

dangerous chemicals like phthalates.  Defendant states on the website that its Kraft Mac & Cheese

Products are "[t]he part of parenting that's impossible to mess up" and that is "[b]ecause Kraft

Mac & Cheese is made with no artificial flavors, preservatives, and dyes."[49]

59.     Based on Defendant's decision to advertise and market its Kraft Mac & Cheese

Products on its packaging as wholesome, safe, healthy, without "artificial" substances, and as

---

[49] https://www.kraftmacandcheese.com/ (last accessed Aug. 16, 2022).

"goodness," it had a duty to ensure that these and other statements were true and not misleading, which it failed to do.

60.     Defendant's failure to disclose the presence (or risk) of phthalates on the Products' packaging also deceived reasonable consumers.

### III.     CLASS ACTION ALLEGATIONS

61.     Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and a multi-state Class defined as:

> **All persons who, during the applicable statute of limitation period to the present, purchased Kraft Mac & Cheese Products in California, Florida, New York, Connecticut, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey and Washington for personal and/or household use, and not for resale (the "Class" or "Multi-State Class").**

62.     The Class excludes Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

63.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3), as well as 23(c)(4), are satisfied.  Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

64.     **Numerosity:**  All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied.  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs.  Plaintiffs believe that the identity of Class members is known or knowable by Defendant or can be discerned

through reasonable means. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

65. **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a. whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b. whether the misrepresentations and omissions by Defendant were likely to deceive a reasonable consumer;

c. whether Defendant knew or should have known that the Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates;

d. whether Defendant misrepresented and/or failed to disclose that the Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates;

e. whether Defendant was unjustly enriched by its actions;

f. whether Defendant breached its warranties to Plaintiffs and the Class;

g. whether the omitted facts are material to a reasonable consumer;

h. whether Plaintiffs and members of the Class were injured and suffered damages;

i. whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief; and

j. whether Plaintiffs and members of the Class are entitled to damages and, if so, the measure of such damages.

66.     **Typicality:**  All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied.  Plaintiffs are members of the Class, having purchased for personal/household use Kraft Mac & Cheese Products that were manufactured by Defendant.  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

67.     **Adequacy of Representation:**  All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.  Plaintiffs are adequate Class representatives because they are members of the Multi-State Class and their interests do not conflict with the interests of the other members of the Class that they seek to represent.  Plaintiffs are committed to pursuing this matter for the Class with the Class' collective best interests in mind.   Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs, and their counsel, will fairly and adequately protect the Class' interests.

68.     **Predominance and Superiority:**  All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.  As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' individual cases will also resolve them for the Class' claims.  In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.

Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

69. **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class making final declaratory or injunctive relief appropriate.

### IV.    CAUSES OF ACTION

### COUNT I
**Violations of Multiple State Consumer Fraud and Deceptive Business Practice Laws**
**(On Behalf of Plaintiffs and the Multi-State Class)**

70. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

71. Plaintiffs bring this Claim individually and on behalf of other members of the Multi-State Class defined above.

72. The Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*, the "Act"), prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact,… whether any person has in fact been misled, deceived, or damaged thereby." The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

73. Defendant's material misrepresentations and omissions constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the Act and the following State consumer protection statutes, which are

materially similar to the Act:  the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; the Florida Deceptive and Unfair Trade Practices Act § 501.201; the New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, and New York Consumer Law for False Advertising, N.Y. Gen Bus. Law § 350; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b; the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*, and Massachusetts G.L. c. 266 § 91; the Michigan Consumer Fraud Act, Mich. Stat. § 445.901 *et seq.*; the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68-325F.70; the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and the Washington Unfair Business Practices – Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq*.

74.     Plaintiffs and the members of the Class are consumers within the meaning of the State Statutes.

75.     Defendant's unfair and deceptive practices took place in the course of trade and commerce.

76.     As discussed above, Defendant's Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates.  Defendant knew or should have known that its Kraft Mac & Cheese Products contained (or risked containing) dangerous phthalates but made material misrepresentations and omissions regarding these facts on its packaging for the Products.

77.     Plaintiffs and the Class would not have purchased the Kraft Mac & Cheese Products at issue had they known the truth about the presence (or risk) of dangerous phthalates, or they would have paid less than they did for the Products.

78. Defendant violated the State Statutes by making material misrepresentations and omissions regarding the presence (or risk) therein of dangerous phthalates.

79. If Defendant had not sold Kraft Mac & Cheese Products containing (or risking containing) dangerous phthalates, Plaintiffs and other members of the Class would not have suffered the extent of damages caused by Defendant's sales.

80. Defendant's practices, acts, policies, and course of conduct violate the State Statutes in that, among other things, Defendant knowingly made material misrepresentations and omissions on its packaging for the Products to Plaintiffs and the Class at the time they purchased the Kraft Mac & Cheese Products, including the fact that Defendant's products contained (or risked containing) dangerous phthalates.

81. The aforementioned conduct constitutes an unconscionable commercial practice.

82. Defendant had a duty to disclose these material facts because it had exclusive knowledge of material facts not known to Plaintiffs or other consumers and it actively concealed material facts from Plaintiffs and other consumers. It also made statements on its packaging that created the overall impression that the Products were wholesome, safe, healthy, and free from "artificial" substances, and were "goodness," without disclosing the presence or risk of phthalates, a dangerous and artificial substance.

83. Defendant intended for Plaintiffs and the members of the Class to rely on these deceptive and unfair practices when Plaintiffs and the Class purchased the Kraft Mac & Cheese Products.

84. Members of the public, including Plaintiffs and the members of the Class, were deceived by Defendant's material misrepresentations and failures to disclose.

85.     Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing Kraft Mac & Cheese Products from Defendant.  Said acts and practices are material as described hereinabove.

86.     More than 30 days prior to the filing of her action in Massachusetts, Plaintiff Francione delivered to Defendant a written demand for relief.  Defendant failed to respond to this demand in any reasonable manner.

87.     By letter dated March 23, 2021, Plaintiffs Clarke and deVera sent Defendant notice of their claims under the California Consumers Legal Remedies Act.  Defendant failed to respond to this notice in any reasonable manner.

88.     As a direct and proximate cause of Defendant's conduct, Plaintiffs and the Class members suffered damages as alleged above.  Pursuant to the State Statutes, Plaintiffs individually, and as members of the Class, are entitled to recover costs and reasonable attorneys' fees in this action to the extent available.  Plaintiffs also seek declaratory and injunctive relief as described herein.

89.     In addition to or in lieu of actual damages, because of the injury, Plaintiffs and the Class members seek statutory damages and/or punitive damages for each injury and violation which has occurred, as available under the State Statutes.

**<u>COUNT II</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Multi-State Class)**

90.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

91.     Plaintiffs and Class members conferred a monetary benefit on Defendant. Specifically, they purchased Kraft Mac & Cheese Products from Defendant and provided

Defendant with their monetary payment. However, in exchange, Plaintiffs and Class members received from Defendant goods that contained (or risked containing) dangerous phthalates through material misrepresentations and without disclosure of same.

92. Defendant knew that Plaintiffs and Class members conferred a benefit on them and accepted or retained that benefit. Defendant profited from Plaintiffs' purchases and used Plaintiffs and Class members' monetary payments for business purposes.

93. Defendant misrepresented and failed to disclose to Plaintiffs and Class members that its Kraft Mac & Cheese Products contained (or risk containing) dangerous phthalates.

94. If Plaintiffs and Class members knew that Defendant's Kraft Mac & Cheese Products contained (or risked containing) dangerous phthalates as alleged herein, they would not have purchased Defendant's Kraft Mac & Cheese Products or would have paid less for them than they did.

95. Plaintiffs and Class members have no adequate remedy at law.

96. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and Class members conferred on them.

97. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class members overpaid.

### COUNT III
**Breach of Implied Warranty**
**(On Behalf of Plaintiffs and the Multi-State Class)**

98. Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

99.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

100.    There was a sale of goods from Defendant to Plaintiffs and the Class.

101.    At all times mentioned herein, Defendant manufactured and distributed the Kraft Mac & Cheese Products, and prior to the time such products were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Kraft Mac & Cheese Products were of merchantable quality and fit for their ordinary use.

102.    Plaintiffs and the Class relied on these implied warranties by Defendant when they purchased the Kraft Mac & Cheese Products.

103.    The Kraft Mac & Cheese Products were not of merchantable quality and were not fit for their ordinary use as they contained (or risk containing) dangerous phthalates and Defendant thus breached its implied warranties to Plaintiffs and the Class.

104.    By letter dated March 6, 2021, Plaintiff Stuve put Defendant on notice of its breach of warranty.  By letter dated April 2, 2021, Plaintiff Nicodemo put Defendant on notice of its breach of warranty.  By letter dated April 21, 2021, Plaintiff Moskowitz put Defendant on notice of its breach of warranty.  By letter dated March 23, 2021, Plaintiffs Clarke and deVera put Defendant on notice of its breach of warranty.

105.    Privity exists because Defendant knew that consumers such as Plaintiffs and the Class would be the end purchasers of the Kraft Mac & Cheese Products and the target of its marketing.  Defendant intended its marketing to be considered by the end purchasers of the Kraft Mac & Cheese Products, including Plaintiffs and the Class.  Defendant directly marketed to Plaintiffs and the Class through statements on the packaging of the Products.

106.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Kraft Mac & Cheese Products worth

less than the price they paid, and that they would not have purchased at all had they known of the presence (or risk) of dangerous phthalates, or would have paid less for the Products than they did.

107.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available for Defendant's failure to deliver goods conforming to Defendant's implied warranties and resulting breach.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Multi-State Class)**

108.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

109.     Plaintiffs and the Class members were each persons whom Defendant might reasonably have expected to consume and be affected by the Products.

110.     As set forth herein, Defendant made express representations to Plaintiffs and the Class on the packaging that the Kraft Mac & Cheese Products are wholesome, safe, healthy and free from dangerous and artificial substances like phthalates.

111.     These promises, and all others on the packaging of the Kraft Mac & Cheese Products, became part of the basis of the bargain between the parties and thus constituted express warranties.

112.     There was a sale of goods from Defendant to Plaintiffs and the members of the Class.

113.     On the basis of these express warranties, Defendant sold the Kraft Mac & Cheese Products to Plaintiffs and the Class.

114.    Defendant knowingly breached the express warranties by including phthalates in the Kraft Mac & Cheese Products sold to Plaintiffs and the Class and by making the representations on their Product packages as alleged herein.

115.    Plaintiffs and the Class reasonably relied on the express warranties made by Defendant on the Products' packaging.

116.    By letter dated March 6, 2021, Plaintiff Stuve put Defendant on notice of its breach of warranty.  By letter dated April 2, 2021, Plaintiff Nicodemo put Defendant on notice of its breach of warranty.  By letter dated April 21, 2021, Plaintiff Moskowitz put Defendant on notice of its breach of warranty.  By letter dated March 23, 2021, Plaintiffs Clarke and deVera put Defendant on notice of its breach of warranty

117.    As a result and as a direct cause of Defendant's breaches of its express warranties, Plaintiffs and the Class sustained damages as they paid money for the Kraft Mac & Cheese Products that were not what Defendant represented.

118.    Plaintiffs, on behalf of themselves and the Class, seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available for Defendant's breach of express warranties.

## V.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court:

a)    Certify the Multi-State Class, and appoint Plaintiffs and their counsel to represent the Multi-State Class;

b)    Find that Defendant engaged in the unlawful conduct as alleged herein;

- 37 -

c)       Enjoin Defendant from engaging in such conduct and order any further declaratory and/or injunctive relief as appropriate;

d)       Enter a monetary judgment in favor of Plaintiffs and the Class to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, statutory and punitive damages, and penalties where appropriate;

e)       Require Defendant to rectify all damages caused by its misconduct;

f)       Award Plaintiffs and the Class reasonable attorneys' fees and costs of suit, as allowed by law; and

g)       Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: August 19, 2022          Respectfully submitted,


/s/ Katrina Carroll
Katrina Carroll
Nicholas Lange
**LYNCH CARPENTER LLP**
111 Washington Street, Suite 1240
Chicago, Illinois 60602
Phone: (312) 750-1265
Fax: (773) 598-5609
Email: katrina@lcllp.com
Email: nickl@lcllp.com

Janine L. Pollack
Michael Liskow
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Phone: (212) 899-1760
Fax: (332) 206-2073
Email: jpollack@calcaterrapollack.com
Email: mliskow@calcaterrapollack.com

Joshua D. Arisohn
Alec M. Leslie
**BURSOR & FISHER, P.A.**
888 7th Ave.
New York, New York 10019
Phone: (646) 837-7150
Fax: (212) 989-9163
Email: jarisohn@bursor.com
Email: aleslie@bursor.com

David J. George
Brittany Brown
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
Email: BBrown@4-justice.com
Email: EService@4-justice.com

Lori G. Feldman, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-justice.com
Email : EService@4-justice.com

Rebecca A. Peterson
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Phone:  (612) 339-6900
Fax:  (612) 339-0981
Email:  rapeterson@locklaw.com

Jason P. Sultzer
Daniel Markowitz
Mindy Dolgoff
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Phone: (845) 483-7100
Fax: (888) 749-7747
Email: sultzerj@thesultzerlawgroup.com
Email: markowitzd@thesultzerlawgroup.com
Email: dolgoffm@thesultzerlawgroup.com

Charles E. Schaffer
David C. Magagna Jr.
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Email: cschaffer@lfsblaw.com
Email: dmagagna@lfsblaw.com

Edward L. Manchur
**THE LAW OFFICES OF EDWARD L.
MANCHUR, P.C.**
P.O. Box 3156
Peabody, Massachusetts 01960
Phone: (978) 333-1013
Email: manchurlaw@gmail.com

*Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that, on August 19, 2022, I caused a copy of the foregoing to be served via CM/ECF on all counsel of record who have entered an appearance.

*/s/ Katrina Carroll*
Katrina Carroll
