## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GABRIELLE STUVE, JESSICA NICODEMO, KELLY TARANTINO, MICHELLE FRANCIONE, LANA MOSKOWITZ, AARON CLARKE, and MICHELLE DEVERA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>THE KRAFT HEINZ COMPANY a/k/a KRAFT HEINZ FOODS COMPANY,<br><br>        Defendant. | Case No. 1:21-CV-01845<br><br>The Hon. Rebecca R. Pallmeyer |

**MEMORANDUM OF LAW IN SUPPORT OF THE KRAFT HEINZ COMPANY'S
MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
Thomas E. Quinn
tquinn@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

*-and-*

Kate T. Spelman (*pro hac vice*)
kspelman@jenner.com
Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100

Attorneys for Defendant
The Kraft Heinz Company

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

BACKGROUND ..........................................................................................................3

    I.    Phthalates Are Common Chemicals, Which the FDA Expressly Permits in Food Contact Applications and Which Pose No Health Hazards in Trace Levels. ..........................................................................................................3

    II.    Plaintiffs Challenge the Alleged Presence of Phthalates in Kraft Mac & Cheese. ..........................................................................................................4

ARGUMENT ..........................................................................................................6

    I.    Plaintiffs' Claims Are Preempted Because the FDA Permits Phthalates in Food Contact Applications and Regards Them as Safe. ...............................6

    II.    Plaintiffs' Failure-to-Disclose Claims Are Both Preempted and Implausible. ...........10

        A.    Plaintiffs' failure-to-disclose claims are preempted because they seek to impose disclosure requirements that are not imposed by federal law. ...............11

        B.    Plaintiffs' failure-to-disclose claim also fails because the alleged presence of phthalates is not material to reasonable consumers. ........................14

    III.    Plaintiffs' Claims Based on Alleged Misrepresentations Are Not Actionable. ...........18

        A.    "The Taste You Love," "Gooey, Cheesy Goodness," and "The Part of Parenting That's Impossible to Mess Up" are non-actionable puffery. ..............19

        B.    The alleged presence of phthalates does not render the truthful "NO Artificial _____" statements on the packaging false or misleading. ................21

        C.    Plaintiffs cannot challenge the statements on Kraft Heinz's website because they do not allege that they visited or relied on that website. ...............23

    IV.    Plaintiffs' Breach of Warranty and Unjust Enrichment Claims Also Fail ...................24

CONCLUSION ..........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Nestle Purina PetCare Co.*,
  973 F. Supp. 2d 905 (N.D. Ill. 2013) ....................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................18

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018) ..................................................................22

*Axon v. Florida's Natural Growers, Inc.*,
  814 F. App'x 701 (2d Cir. 2020) ...........................................................................18

*Backus v. Biscomerica Corp.*,
  378 F. Supp. 3d 849 (N.D. Cal. 2019) ....................................................................9

*Beardsall v. CVS Pharmacy, Inc.*,
  953 F.3d 969 (7th Cir. 2020) ................................................................................19

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ........................................................................17, 18

*Berry v. Budget Rent A Car Sys., Inc.*,
  497 F. Supp. 2d 1361 (S.D. Fla. 2007) .................................................................24

*Bildstein v. MasterCard Int'l, Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004) ..................................................................14

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
  No. 08-1967, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ...........................12, 13

*Brodsky v. Aldi Inc.*,
  No. 20-7632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021) ..................................25

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ..................................................................................4

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ..................................................................25

*Chavez v. Church & Dwight Co.*,
  No. 17-1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) ...................................23

*Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*,
    24 F. Supp. 3d 750 (N.D. Ill. 2014) ...............................................................11, 13

*Cleary v. Philip Morris Inc.*,
    656 F.3d 511 (7th Cir. 2011) ...............................................................................24

*Decker v. Mazda Motor of Am., Inc.*,
    No. 11-873, 2013 WL 12129281 (C.D. Cal. Mar. 29, 2013)................................15

*Galanis v. Starbucks Corp.*,
    No. 16-4705, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) ...................................18

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000).................................................................................................7

*In re Gen. Mills Glyphosate Litig.*,
    No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ............................15, 22

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
    966 F. Supp. 1525 (E.D. Mo. 1997).....................................................................25

*George v. Starbucks Corp.*,
    857 F. App'x 705 (2d Cir. 2021) .....................................................................21, 22

*George v. Starbucks Corp.*,
    No. 19-6185, 2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020)............................21, 22

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................23

*Harris v. Mondelēz Global LLC*,
    No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 20, 2020)..................................19

*Harris v. Topco Assocs., LLC*,
    538 F. Supp. 3d 826 (N.D. Ill. 2021) ....................................................................11

*Hawkins v. Kellogg Co.*,
    224 F. Supp. 3d 1002 (S.D. Cal. 2016)...................................................................9

*Johnson v. Organo Gold International, Inc.*,
    No. 15-390, 2016 WL 2771124 (D. Del. May 13, 2016) .......................................13

*Jonathan Pepper Co. v. Hartford Cas. Ins. Co.*,
    381 F. Supp. 2d 730 (N.D. Ill. 2005) ....................................................................16

*Kennedy v. Covidien, LP*,
    No. 18-1907, 2019 WL 1429979 (S.D.N.Y. Mar. 29, 2019)..................................24

*Kennedy v. Mondelēz Global LLC*,
    No. 19-302, 2020 WL 4006197 (E.D.N.Y July 10, 2020)......................................................24

*In re KIND LLC "Healthy & All Natural" Litig.*,
    --- F. Supp. 3d ----, 2022 WL 4125065 (S.D.N.Y. Sept. 9, 2022)..........................................17

*Lateef v. Pharmavite LLC*,
    No. 12-5611, 2012 WL 5269619 (N.D. Ill. Oct. 24, 2012) ....................................................12

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020)...................................................................................20

*Manley v. Hain Celestial Grp., Inc.*,
    417 F. Supp. 3d 1114 (N.D. Ill. 2019) .............................................................................14, 25

*Nemphos v. Nestle Waters North America, Inc.*,
    775 F.3d 616 (4th Cir. 2015) ..........................................................................................9, 10

*Notification Techs., Inc. v. Parlant Tech., Inc.*,
    No. 05-89, 2005 WL 8173034 (S.D. Cal. Jan. 27, 2005) .......................................................20

*Pappas v. Pella Corp.*,
    363 Ill. App. 3d 795 (2006) ...............................................................................................20

*Parks v. Ainsworth Pet Nutrition, LLC*,
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)......................................................................14, 15, 22

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008)...................................................................................11

*PETA v. Whole Foods Mkt. Cal., Inc.*,
    No. 15-4301, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016)...................................................20

*Podpeskar v. Dannon Co.*,
    No. 16-8478, 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) .....................................................18

*Puri v. Costco Wholesale Corp.*,
    No. 21-1202, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021)...................................................18

*Red v. Kraft Foods, Inc.*,
    No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)...................................................23

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ...........................................................................24

*Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*,
    858 F.2d 1095 (5th Cir. 1988) ...........................................................................................25

*Spector v. Mondelēz Int'l, Inc.*,

178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................24

*Thompson v. Procter & Gamble Co.*,
  No. 18-60107, 2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) ................................20

*Truxel v. Gen. Mills Sales, Inc.*,
  No. 16-4957, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ................................21

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) ...................................................................11, 13

*Twohig v. Shop-Rite Supermarkets, Inc.*,
  519 F. Supp. 3d 154 (S.D.N.Y. 2021) .................................................................17

*Union Pac. R. Co. v. Chicago Transit Auth.*,
  647 F.3d 675 (7th Cir. 2011) .............................................................................6

*USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*,
  No. 15-80352, 2016 WL 4250668 (S.D. Fla. Apr. 12, 2016) ................................20

*Viggiano v. Hansen Natural Corp.*
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .................................................................7

*Weiss v. Gen. Motors LLC*,
  418 F. Supp. 3d 1173 (S.D. Fla. 2019) ...............................................................25

*Weiss v. Kroger Co.*,
  No. 14-3780, 2014 WL 5114608 (C.D. Cal. Aug. 8, 2014) ................................21

*Young v. Johnson & Johnson*,
  525 F. App'x 179 (3d Cir. 2013) .......................................................................13

*Yu v. Dr. Pepper Snapple Grp., Inc.*,
  No. 18-6664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ................................9, 18

**Statutes**

21 U.S.C. § 343-1(a) ...................................................................................11, 14

**Other Authorities**

21 C.F.R. § 100.1 .............................................................................................11

21 C.F.R. § 101.100 ...................................................................................2, 12, 13

21 C.F.R. § 175.105 ............................................................................................3

21 C.F.R. § 175.300 ............................................................................................3

21 C.F.R. § 176.170 ...................................................................................................3

21 C.F.R. § 177.1010 .................................................................................................3

21 C.F.R. § 177.1200 .................................................................................................3

21 C.F.R. § 177.1210 .................................................................................................3

21 C.F.R. § 178.3740 ...........................................................................................1, 3, 7

## INTRODUCTION

This lawsuit alleges that Kraft Mac & Cheese—a familiar, convenient, and affordable comfort food that consumers have enjoyed for generations—is mislabeled because it purportedly contains chemicals known as "phthalates," which allegedly are not intentionally added but migrate into the cheese powder during the manufacturing process. Based on their unfounded allegation derived solely from testing a third party in Europe allegedly conducted five years ago showing that the products tested contained trace phthalates, Plaintiffs claim Kraft Heinz misleads consumers today by failing to disclose the supposed presence of phthalates on the packaging. Plaintiffs further allege that a variety of labeling claims—such as "NO Artificial Dyes" and "gooey, cheesy goodness"—suggest that Kraft Mac & Cheese is free of phthalates. These claims are both preempted by federal law and implausible.

At the outset, Plaintiffs' lawsuit fails because the FDA has expressly authorized the use of phthalates in food contact applications. *See* 21 C.F.R. § 178.3740 (permitting the use of phthalates in substances used for "producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food"). The FDA has also rejected Plaintiffs' assertion that phthalates are unsafe at any level, and it has made clear that oral exposure to phthalates—such as DEHP, one of the most common phthalates—is safe at levels *far higher* than those allegedly found in Kraft Mac & Cheese. Critically, Plaintiffs do not allege that phthalates are an ingredient or that Kraft Heinz intentionally adds them to Kraft Mac & Cheese. And even if Plaintiffs were correct that the Kraft Mac & Cheese they personally purchased contained trace amounts of phthalates, which they have not plausibly alleged, the FDA has rejected their core allegation that those levels of phthalates are "unsafe" and "toxic."

Indeed, Plaintiffs' attempt to hold Kraft Heinz liable for failing to disclose the presence of phthalates is preempted by federal law, as manufacturers need not disclose the presence of "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives."  21 C.F.R. § 101.100(a)(3)(iii).  Plaintiffs concede that phthalates are not ingredients or food additives that Kraft Heinz puts into Kraft Mac & Cheese, but instead substances that "enter food during processing and packing."  Consol. Am. Class Action Compl. ("CAC") ¶ 28. Given Plaintiffs' contention that the alleged phthalates must have migrated into Kraft Mac & Cheese from manufacturing equipment and packaging, any attempt to require the disclosure of phthalates would necessarily exceed the disclosure requirements imposed by federal law.

Plaintiffs' claims are not only preempted, but also meritless.  Although Plaintiffs seek to hold Kraft Heinz liable for failing to disclose the alleged presence of phthalates in Kraft Mac & Cheese, they have not plausibly alleged that the supposed presence of trace phthalates is material to a reasonable consumer, as Plaintiffs must allege to establish that Kraft Heinz was under a duty to disclose.  Plaintiffs allege that Kraft Heinz acknowledged the materiality of phthalates in the Frequently Asked Questions page of the Kraft Mac & Cheese website, but that allegation grossly mischaracterizes the contents of the website, in which Kraft Heinz maintains that the trace levels of phthalates allegedly detected by one organization's supposed testing are "well below any level of concern."  And while Plaintiffs allege that they conducted a consumer survey that showed that the presence of phthalates would be "important or very important" to 89.5% of consumers, that purported survey does not salvage Plaintiffs' unreasonable interpretation of the labeling.

Plaintiffs cannot circumvent this result by framing this as a lawsuit premised on alleged affirmative misrepresentations, as the labeling claims they challenge say nothing about the presence or absence of trace phthalates.  To the contrary, these statements—which have nothing

to do with phthalates—are either true (*e.g.*, "NO Artificial Preservatives") or puffery (*e.g.*, "gooey, cheesy goodness"). And to the extent Plaintiffs challenge any statements on Kraft Heinz's website, those claims fail because they do not allege that they relied on—or even visited—that website.

Plaintiffs' core theories of deception are both implausible and preempted, and their tag-along claims for breach of warranty and unjust enrichment are also independently defective. This Court should dismiss their lawsuit with prejudice and without further leave to amend.

## **BACKGROUND**

**I.     Phthalates Are Common Chemicals, Which the FDA Expressly Permits in Food Contact Applications and Which Pose No Health Hazards in Trace Levels.**

As the FDA has noted, phthalates "are a group of chemicals used in hundreds of products, such as . . . food packaging, pharmaceuticals, blood bags and tubing, and personal care products." RJN Ex. 1. The FDA expressly permits their use in a wide variety of food manufacturing and packaging applications.[1] Indeed, the FDA has issued a regulation stating that certain substances, including numerous phthalates, "may be *safely* used as plasticizers in polymeric substances used in the manufacture of articles or components of articles intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food." 21 C.F.R. § 178.3740 (emphasis added).

The FDA has not set a specific threshold for the level of phthalates allowed in food products. *See* CAC ¶ 33. However, the FDA and other government agencies have repeatedly concluded that trace amounts of phthalates are safe and pose no harm. For example, in assessing the risks associated with plastics in medical devices, the FDA has concluded that, for oral exposure,

---

[1] *See, e.g.*, 21 C.F.R. §§ 175.105 ("Adhesives"), 175.300 ("Resinous and Polymeric Coatings"), 176.170 ("Components of Paper and Paperboard in Contact with Aqueous and Fatty Foods"), 177.1010 ("Acrylic and Modified Acrylic Plastics, Semirigid and Rigid"), 177.1200 ("Cellophane"), 177.1210 ("Closures with Sealing Gaskets for Food Containers").

the "tolerable intake" of the phthalate Di(2-ethylhexyl)phthalate ("DEHP") is approximately 0.04 mg/kg/day.  *See* RJN Ex. 2.   In other words, the "tolerable intake" of DEHP would be approximately 2 milligrams per day for a smaller person who weighed 110 pounds, approximately 3 milligrams per day for a medium-sized person who weighed 165 pounds, or approximately 4 milligrams per day for a larger person who weighed 220 pounds. *See id.*  Thus, the FDA recognizes that trace amounts of phthalates do not present any health risks.

## II.     Plaintiffs Challenge the Alleged Presence of Phthalates in Kraft Mac & Cheese.

This lawsuit concerns the alleged presence of phthalates in Kraft Mac & Cheese, a well-known comfort food sold in an iconic blue box and consumed by millions of Americans.  *See* RJN Ex. 3 (labeling of Kraft Mac & Cheese).  Notably, the packaging does not state that Kraft Mac & Cheese is "natural," "unprocessed," or free of phthalates.   Instead, it highlights the product's cheesy flavor and notes that it has "The Taste You Love."  *See id.*  The box also notes that the product contains no artificial dyes, preservatives, or flavors.  *See id.*

Plaintiffs do not allege that the Kraft Mac & Cheese they personally purchased contained any detectable amount of phthalates.  Nor do they allege that they conducted any testing of their own that confirmed the presence of phthalates in the products they purchased or any Kraft Mac & Cheese product generally, or that even suggested that those products had an elevated risk of containing phthalates.  Instead, Plaintiffs rely on a 2017 report from the Coalition for Safer Food Processing and Packaging, which "published a study . . . that tested, among other cheese products, cheese powder in ten varieties of macaroni and cheese."  CAC ¶ 29; *see also* RJN Ex. 4.[2]

---

[2] Because Plaintiffs repeatedly cite the Coalition's study and rely on it as the basis for their claim that Kraft Mac & Cheese contains phthalates, this Court can take judicial notice of the contents of that study in ruling on this motion.  *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may

That study purported to find an average of 106 parts per billion (or .106 milligrams per kilogram of dry product) of phthalates in the ten tested varieties of macaroni & cheese, with a range between 34 and 218 parts per billion. *See* RJN Ex. 4. The study also purported to find that DEHP was found more often, and at much higher concentrations, than other phthalates. *See* CAC ¶ 29. While the study did not state that it considered Kraft Mac & Cheese or identify the amount of phthalates allegedly present in Kraft Mac & Cheese, Plaintiffs allege that the Coalition sent Kraft Heinz a June 2017 letter regarding the presence of phthalates in Kraft Mac & Cheese, leading Plaintiffs to speculate that the study included the product. *See id.* ¶¶ 30–31. And because Plaintiffs did not conduct any testing of their own, Plaintiffs cannot conclusively assert that *any* testing—including the tests the Coalition conducted four years before they filed this lawsuit in 2021—has confirmed the presence of phthalates in Kraft Mac & Cheese

Plaintiffs' lawsuit rests on the premise that phthalates are "toxic industrial chemicals" that are linked to a wide variety of alleged maladies, including reproductive organ damage, cancer, asthma, allergies, and bronchial obstruction. *Id.* ¶¶ 9, 35. Although Plaintiffs do not allege that they or their children suffered any adverse health consequences as a result of eating Kraft Mac & Cheese, they claim that Kraft Heinz misleads consumers because it "never disclose[s] anything about phthalates on the Products' packaging." *Id.* ¶ 32; *see also id.* ¶¶ 12-18 (referring to "material omissions" on the packaging); *id.* ¶ 9 ("Kraft chose to omit any information about the presence (or risk) of phthalates in the Kraft Mac & Cheese Products on the Product[s'] packaging.").

In addition to their omissions-based claims, Plaintiffs challenge various phrases on the packaging of Kraft Mac & Cheese and on Kraft Heinz's website—such as "NO Artificial Flavors,"

---

consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.") (citation and internal quotation marks omitted).

"NO Artificial Preservatives," "NO Artificial Dyes," "gooey, cheesy goodness," and "the part of parenting that's impossible to mess up." *See id.* ¶¶ 49–59. Notably, Plaintiffs do not allege that any of these statements are actually false—for example, by alleging that the products contain artificial flavors or that Kraft Mac & Cheese is not actually "cheesy" and "gooey." Instead, Plaintiffs allege that these statements are misleading because they "lead reasonable consumers to believe that the Products are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances, like phthalates." *Id.* ¶¶ 51, 53; *see also id.* ¶ 58 (similar).

Based on these allegations, Plaintiffs assert claims for "violations of multiple state consumer fraud and deceptive business practice laws," unjust enrichment, and breach of express and implied warranty. *Id.* ¶¶ 70–118. Plaintiffs assert these claims on behalf of themselves and a putative "multi-state Class" of California, Connecticut, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington consumers. *Id.* ¶ 61.

## ARGUMENT

**I.   Plaintiffs' Claims Are Preempted Because the FDA Permits Phthalates in Food Contact Applications and Regards Them as Safe.**

The core premise of Plaintiffs' lawsuit is that, because phthalates are allegedly harmful to human health, Kraft Heinz must disclose their supposed presence and purported risks on the product packaging. *See* CAC ¶ 1 ("Phthalates are harmful chemicals, and their consumption carries a risk of adverse health impacts."); *id.* ¶ 38 (describing the allegedly "harmful and dangerous effects of phthalates"). But Plaintiffs' claims are preempted because they conflict with the FDA's determination that phthalates are safe for use in food contact applications.

"[U]nder the Supremacy Clause, federal law 'preempts state laws that interfere with, or are contrary to, federal law.'" *Union Pac. R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011). To that end, the Supreme Court has held that state-law claims are preempted where

the application of state law would "prevent or frustrate the accomplishment of a federal objective." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000). Plaintiffs' claims are accordingly preempted if Kraft Heinz's alleged conduct is "expressly permitted by FDA regulations." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).

Here, Plaintiffs allege that Kraft Mac & Cheese is unsafe because it allegedly contains trace amounts of phthalates, which they repeatedly characterize as "dangerous" and "toxic." But the FDA has expressly permitted the use of phthalates in food contact applications, reflecting its understanding that some amount of phthalates inevitably ends up in the food supply. *See* 21 C.F.R. § 178.3740. And while Plaintiffs claim that the FDA "has not set a standard for acceptable levels of phthalates in food products" (CAC ¶ 33), it has determined that the risk associated with oral exposure to phthalates is *exceedingly low*.

Specifically, the FDA has found that the "tolerable intake" of the phthalate DEHP is 0.04 mg/kg/day, which would range between 2 and 4 mg per day of phthalates for adults who weigh between 50 kilograms (roughly 110 pounds) and 100 kilograms (roughly 220 pounds). *See* RJN Ex. 2. By comparison, the report Plaintiffs cite indicates that, of the 10 varieties of packaged macaroni and cheese tested, the average concentration of phthalates in the cheese powder in all ten products was 0.106 milligrams of *all* phthalates per kilogram of cheese powder. *See* RJN Ex. 4. In other words, a box of Kraft Mac & Cheese, which contains 206 grams of product, would contain 0.0218 milligrams of phthalates if one assumed that the *entire box* consisted of cheese powder (as opposed to pasta, which makes up the bulk of the weight and is not alleged to contain phthalates). Even if the concentration of phthalates found in the cheese powder in Kraft Mac & Cheese were 218 milligrams per kilogram of product (the highest concentration found in the Coalition's study), a box of Kraft Mac & Cheese would contain only 0.0449 milligrams of phthalates.

That amount—the highest conceivable amount possible—is not remotely unsafe. At such trace levels, an adult consumer would need to eat *hundreds* of servings per day of macaroni and cheese to approach an unsafe level of phthalates.[3] *See* RJN Ex. 5. But even if one drew all conceivable assumptions in Plaintiffs' favor, and even if one overlooked that the Coalition's report (*i.e.*, the sole source of testing data plaintiffs identify) does not identify specifically Kraft Mac & Cheese, the report itself proves that the alleged amount of phthalates in Kraft Mac & Cheese is well below the "tolerable intake" of phthalates that the FDA has deemed safe:

- If one assumed that each 206-gram box of Kraft Mac & Cheese contained 0.0218 milligrams of phthalates, a consumer could eat one hundred boxes (or three hundred servings) of Kraft Mac & Cheese per day and consume only 2.18 milligrams of phthalates. That is still far less than the "tolerable intake" of DEHP deemed safe in a 165-pound adult by the FDA (3 milligrams). *See* RJN Ex. 2.

- Following the same logic as above, if one assumed instead that each 206-gram box of Kraft Mac & Cheese instead contained 0.0449 milligrams of phthalates (the highest amount even remotely conceivable given the Coalition's findings), a consumer could eat fifty boxes of Kraft Mac & Cheese (or 150 servings) each day and still ingest only 2.45 milligrams of phthalates. Again, that is less than the "tolerable intake" of DEHP deemed safe in a 165-pound adult (3 milligrams). *See id.*

Critically, these calculations grossly *overstate* the amount of phthalates allegedly present in Kraft Mac & Cheese, as they assume that the entire box consists of cheese powder, rather than the pasta

---

[3] Even a child who weighed only 20 kilograms (roughly 44 pounds) would have a tolerable intake of 0.80 milligrams of DEHP per day. *See* RJN Ex. 2. If one assumed that each box contained 0.0449 milligrams of phthalates, which is the highest conceivable amount based on the Coalition's report, that child would need to eat over seventeen boxes of Kraft Mac & Cheese each day—which is *physically impossible* for a child that size—to exceed the tolerable intake of DEHP alone.

that makes up the majority of the product's weight.[4]  Nonetheless, even if one made that assumption, the amount of phthalates in Kraft Mac & Cheese is far lower than the amount the FDA regards as safe.  Plaintiffs cannot simply ignore the FDA and seek to impose whatever standard they wish existed.  The alleged presence of trace amounts of phthalates does not render Kraft Mac & Cheese "dangerous" or "toxic," and Plaintiffs' assertion to the contrary is preempted.

Indeed, under similar circumstances, many courts have dismissed lawsuits premised on the theory that trace amounts of a challenged chemical rendered a product "adulterated" or "dangerous," holding that those lawsuits sought to proscribe the use of substances permitted by federal law.  For example, several courts have dismissed false advertising lawsuits premised on the allegation that a defendant's products were "adulterated" because they contained partially hydrogenated oils ("PHOs," or trans fats), which are allegedly "dangerous" and "detrimental to . . . health," because "the use of PHO in food products was not prohibited by federal law during the class period."  *Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849, 851, 855-56 (N.D. Cal. 2019); *see also, e.g.*, *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1012-13 (S.D. Cal. 2016).  Other courts have dismissed false advertising lawsuits alleging that the presence of pesticide residue rendered a product "adulterated" when the federal government expressly permitted trace amounts of those pesticide residues in food products.[5]  And in *Nemphos v. Nestle Waters North America, Inc.*, the Fourth Circuit affirmed the dismissal of a false advertising lawsuit challenging

---

[4]  Plaintiffs allege that the phthalates in Kraft Mac & Cheese come from the cheese powder, rather than the pasta that makes up the majority of the weight of Kraft Mac & Cheese.  *See* CAC ¶ 30 (citing the Coalition's finding that "[f]atty foods, including dairy products, appear[] to be the greatest contributor of dietary exposure to phthalates") (internal quotation marks omitted).

[5]  *See, e.g.*, *Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-6664, 2020 WL 5910071, at *6 (N.D. Cal. Oct. 6, 2020) ("The FDA regulates acetamiprid like it does glyphosate: as pesticides, neither is required to be disclosed on food labels, and the pesticides are allowed to be present in foods in specified trace amounts . . . without the food being deemed unsafe or adulterated.").

the presence of fluoride in the defendant's bottled water. 775 F.3d 616, 617 (4th Cir. 2015). In so holding, the court reasoned that the plaintiff's failure-to-warn and false advertising claims were preempted because they sought to hold the defendant liable for using allegedly "excessive" amounts of fluoride, even though the plaintiff did "not allege that [the defendant's] bottled water products contained fluoride concentrations above the thresholds set by the FDA." *Id.* at 624.

Here, as in all these cases, Plaintiffs seek to impose liability on Kraft Heinz based on the presence of phthalates—a substance that the FDA expressly authorizes for food contact applications and deems safe at levels far higher than those allegedly found in Kraft Mac & Cheese. Plaintiffs attempt to head off this argument by alleging that, "unlike other chemicals, phthalates appear to have more serious effects at lower levels than at higher levels" and that the alleged harms of phthalates do not increase in proportion to the alleged dose. CAC ¶ 34. But Plaintiffs' counterintuitive allegation that "endocrine disruptors are different" (*id.*) cannot be squared with the FDA's determination that there is a "tolerable intake" of phthalates, which necessarily assumes that the risks associated with phthalates are dose-dependent. *See* RJN Ex. 2.

In short, Plaintiffs' claim that the supposed presence of "phthalates" renders Kraft Mac & Cheese "dangerous" is inconsistent with the FDA's expressed view that phthalates—at least in certain quantities—are safe and pose no health risks. That conflict renders Plaintiffs' lawsuit both preempted and implausible, and this Court should dismiss it.

## II. Plaintiffs' Failure-to-Disclose Claims Are Both Preempted and Implausible.

Even if one accepted the faulty premise that phthalates may be "dangerous," Plaintiffs' lawsuit is still fatally flawed. Their lawsuit is premised on the allegation that Kraft Heinz "fails to disclose on its packaging that Kraft Mac & Cheese Products contain (or risk containing) dangerous phthalates." CAC ¶ 48. To remedy this purported omission, Plaintiffs seek an injunction

"requiring full disclosure of all such substances in Defendant's marketing, advertising, and packaging." *Id.* ¶ 11. This theory cannot withstand dismissal.

Plaintiffs' claim, as well as the injunction they seek, is preempted by federal law, which does not require the disclosure of phthalates or a warning about their purported risks. Moreover, Plaintiffs' failure-to-disclose claim independently fails because the supposed presence of phthalates—particularly in trace amounts—is not material to reasonable consumers.

### A. Plaintiffs' failure-to-disclose claims are preempted because they seek to impose disclosure requirements that are not imposed by federal law.

To promote uniformity in food labeling, the Nutrition Labeling & Education Act ("NLEA") includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a). The phrase "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or the FDA's implementing regulations. 21 C.F.R. § 100.1(c)(4).

As the Seventh Circuit has made clear, Plaintiffs cannot argue their way around this preemption provision by claiming their asserted claims are "consistent with the requirements imposed by the Food, Drug, and Cosmetic Act," because "consistency is not the test; identity is." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011). Put another way, "[s]tates can impose requirements that are *identical to* those imposed by the FDCA, but not *different from* or *more burdensome than* those requirements." *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) (citing *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014)) (emphasis added); *accord In re PepsiCo, Inc., Bottled Water Mktg. & Sales*

11

*Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (noting that "state law cannot impose obligations beyond, or different from, what federal law requires").

Plaintiffs do not identify any FDA regulation requiring the disclosure of phthalates on food labeling, because none exists. To the contrary, the FDA expressly exempts manufacturers from having to disclose the presence of "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the act." 21 C.F.R. § 101.100(a)(3)(iii); *see Lateef v. Pharmavite LLC*, No. 12-5611, 2012 WL 5269619, at *3 (N.D. Ill. Oct. 24, 2012) (holding that the defendant was "exempted from listing on the label the presence of gelatin or animal-based by products because [those were] present in a small amount, and [they] provide[d] 'no technical or functional effect' to the supplement").

Phthalates are a textbook example, as they are not added to food but instead most likely migrate from plastics used in the agricultural, manufacturing, or packaging processes. Indeed, Plaintiffs openly admit that phthalates "enter food during processing and packaging" and "escape[] from food contact materials such as processing equipment and food packaging materials into the cheese powder." CAC ¶ 28. This admission is fatal for Plaintiffs, as the FDA specifically exempts manufacturers from disclosing the presence of substances like phthalates that have migrated into the food. As a result, Plaintiffs' failure-to-disclose claims are squarely preempted, as they seek to use state law to impose labeling requirements that federal law does not impose on Kraft Heinz.

Under similar circumstances, courts around the country have dismissed claims premised on a defendant's failure to disclose trace amounts of chemicals in its products. For example, in *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation*, the plaintiffs alleged that several manufacturers of infant formula had "misbranded" their products by failing to disclose that they were packaged in canisters that contain bisphenol-A ("BPA"). No. 08-1967, 2009 WL

3762965, at *5 (W.D. Mo. Nov. 9, 2009). The court held that this theory was preempted, as the FDA had specifically declined to require manufacturers to disclose incidental additives like BPA that have no technical or functional effect in the food. *See id.* (citing 21 C.F.R. § 101.100(a)(3)). These claims were "expressly preempted," the court explained, "because they would impose disclosure requirements concerning BPA, the exact opposite" of what the regulation provided. *Id.*

Similarly, in *Johnson v. Organo Gold International, Inc.*, the plaintiffs alleged that the defendant's coffee contained a purportedly harmful substance (Ganoderma Lucidum) that the defendant failed to disclose on the labeling of its coffee. No. 15-390, 2016 WL 2771124, at *1 (D. Del. May 13, 2016). The court held that the plaintiff's failure-to-disclose theory was preempted. In so holding, the court explained that the plaintiff's failure-to-disclose theory "directly conflicts with . . . federal labeling requirements, which only allow labeling of ingredient amounts for nutrients or food components identified for disclosure by the FDA, which Ganoderma Lucidum is not." *Id.* at *3. Accordingly, the court concluded that "acceptance of Plaintiff's . . . theory would in effect enforce state law requirements that are not identical to the NLEA" and that his failure-to-disclose theory was therefore preempted. *Id.* (citing *Young v. Johnson & Johnson*, 525 F. App'x 179 (3d Cir. 2013)) (internal quotation marks and alterations omitted).

That reasoning applies with equal force here. It is beyond dispute that federal law does not require Kraft Heinz to include an on-pack disclosure even if there were trace amounts of phthalates in Kraft Mac & Cheese. And even if Plaintiffs subjectively believe that phthalates are "dangerous" or harmful to human health, they cannot use state law to require "disclaimers" about the presence of phthalates or to impose liability on Kraft Heinz for failing to disclose their presence to consumers. *Turek*, 662 F.3d at 427; *see also Chi. Faucet Shoppe*, 24 F. Supp. 3d at 759 ("[S]tate law cannot be used to fill what private litigants perceive to be gaps in the regulatory requirements

13

imposed by federal law."). Because the disclosure requirement Plaintiffs seek to impose under state law is "not identical to" the labeling requirements imposed by federal law, their failure-to-disclose claims are preempted. 21 U.S.C. § 343-1(a).

### B. Plaintiffs' failure-to-disclose claim also fails because the alleged presence of phthalates is not material to reasonable consumers.

To state a consumer fraud claim premised on an alleged omission, a plaintiff must plausibly allege that the "omitted information was material"—*i.e.*, that "a buyer would have acted differently knowing the information." *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1118 (N.D. Ill. 2019) (granting motion to dismiss ICFA claim premised on alleged omissions) (internal quotation marks and alterations omitted); *see also Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (citations and internal quotation marks omitted). Plaintiffs allege that the purported presence of "dangerous phthalates" was material to them and is material to reasonable consumers. CAC ¶¶ 12–18. But the remote risk associated with trace amounts of an allegedly "dangerous" substance is not material to reasonable consumers—which is fatal to Plaintiffs' failure-to-disclose claim.

*Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241 (S.D.N.Y. 2019), is directly on point. There, the plaintiff alleged that the defendant mislabeled its dog food as "natural," even though it contained trace amounts of the herbicide glyphosate. *Id.* at 244. The plaintiff claimed that he was deceived because he "relied on the representation that the Products were 'natural' when he purchased them" and "was willing to pay more for the Products because he expected them to be free of pesticides and other unnatural chemicals." *Id.* The court dismissed the plaintiff's lawsuit. In so holding, the court noted that the "presence of negligible amounts of glyphosate in a

dog food product that do[es] not have harmful, 'toxic,' or 'carcinogenic' effects is not likely to affect consumers' decisions in purchasing the product and is thus not material." *Id.* at 248.

Here, as in *Parks*, Plaintiffs cannot establish that the presence of phthalates—let alone the supposed *de minimis* amounts allegedly present in Kraft Mac & Cheese—is material to reasonable consumers. Given the ubiquity of phthalates (and the plastics from which they allegedly migrate), no reasonable consumer would expect that a processed food product like Kraft Mac & Cheese is completely free of trace amounts of any chemical residue—whether it is phthalates or some other material. *See, e.g.*, *In re Gen. Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("[I]t is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label. It would be nearly impossible to produce a processed food with no trace of any synthetic molecule."). Indeed, Plaintiffs' allegations are even weaker than those in *Parks*, as the labeling of Kraft Mac & Cheese does not claim it is "natural."

Moreover, while Plaintiffs claim that phthalates are "unsafe" and "dangerous," courts have made clear that there is "no duty to disclose a non-existent and hypothetical safety risk," like the purported risks associated with trace amounts of phthalates. *Decker v. Mazda Motor of Am., Inc.*, No. 11-873, 2013 WL 12129281, at *8 (C.D. Cal. Mar. 29, 2013). Because Plaintiffs do not plausibly allege that the trace amounts of phthalates allegedly present in Kraft Mac & Cheese pose a safety risk (a premise the FDA has rejected), Plaintiffs have not alleged that the presence of phthalates is material to reasonable consumers or that Kraft Heinz was under any duty to disclose the presence of phthalates to consumers. Plaintiffs' attempt to evade this result are unavailing.

Plaintiffs first allege that, because Kraft Heinz addressed the Coalition's report in the "Frequently Asked Questions" section of the Kraft Mac & Cheese website, it "knows that its

consumers consider the question of phthalates in regard to food to be important information they would want to know." CAC ¶ 45. While Plaintiffs selectively cherry-pick several snippets from this webpage in an effort to establish that Kraft Heinz has admitted that the presence of phthalates is material to consumers (*see id.* ¶¶ 45-46), they omit the core of Kraft Heinz's position:

> The safety of phthalates has been assessed by the US Food and Drug Administration and other authorities, such as the Centers for Disease Control. ***The trace levels of phthalates found in the one limited test of mac & cheese are well below any level of concern.*** Hundreds of servings of mac & cheese would need to be consumed daily over an entire lifetime in order to exceed levels determined as safe.

RJN Ex. 5 (emphasis added).

Far from admitting that the presence of phthalates should be material to reasonable consumers, Kraft Heinz expressly stated that the "trace levels of phthalates" allegedly detected by the Coalition "are well below any level of concern"—*i.e.*, that they should *not* be material. This Court need not, and should not, accept Plaintiffs' demonstrably false allegation that Kraft Heinz admitted on its website that the presence of phthalates is material to consumers. *See, e.g.*, *Jonathan Pepper Co. v. Hartford Cas. Ins. Co.*, 381 F. Supp. 2d 730, 732 (N.D. Ill. 2005) ("Documents attached to a pleading which are inconsistent with the allegations pleaded may be considered as part of the pleading and result in a plaintiff pleading himself out of court.").

Plaintiffs also allege that their "counsel conducted a survey of 400 adult consumers who bought boxed macaroni and cheese within the past six months" and that "[t]he vast majority (approximately 89.5%) answered that the presence or risk of even a very small amount of phthalates in the boxed macaroni and cheese would be either important or very important to their purchasing decisions." CAC ¶ 47. But Plaintiffs do not attach the survey or the underlying response data, and they allege virtually no facts about the survey. They do not describe the questions posed to respondents, the survey methodology used to measure the "importance" of

phthalates to respondents' purchasing decisions, respondents' preexisting awareness of phthalates, or any other aspects of the survey design. And it is highly doubtful that the survey advised respondents of the amounts of phthalates allegedly present in the product, the FDA's determination that trace amounts of phthalates are safe, or the fact that it would literally require a consumer to eat *hundreds* of servings of Kraft Mac & Cheese each day to reach an "unsafe" level of phthalates.

In similar product mislabeling cases, courts have routinely rejected consumer surveys that are "biased and lead[] the consumer to select the answer preferred by plaintiffs." *In re KIND LLC "Healthy & All Natural" Litig.*, --- F. Supp. 3d ----, 2022 WL 4125065, at *10 (S.D.N.Y. Sept. 9, 2022) (holding that a consumer survey was inadmissible because it was "plainly designed to validate plaintiffs' theory"); *see also*, *e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 164 (S.D.N.Y. 2021) (disregarding purported findings of survey "designed at the behest of counsel" and finding it "sufficiently flawed that it does not contribute enough to render the claims plausible"). Plaintiffs cannot avoid that result by simply omitting any details about the methodology of the survey they engineered to reach the result they wanted.

More fundamentally, a survey cannot transform a consumer's unreasonable belief—such as the assumption that a product does not contain phthalates unless they are disclosed on the packaging—into a reasonable one. For example, in *Becerra v. Dr. Pepper/Seven Up, Inc.*, the complaint "summarize[d] the results of a 2018 survey of 400 California soft-drink consumers and 400 nationwide soft-drink consumers," which purportedly showed that consumers understood the term "diet soda" to mean that the drink would "either help them lose weight, or help maintain or not affect their weight." 945 F.3d 1225, 1230 (9th Cir. 2019). But as both the district court and the Ninth Circuit concluded, the survey did not change the fact that "a reasonable consumer would still understand 'diet' in this context to be a relative claim about the calorie or sugar content of the

product," rather than a claim about weight loss. *Id.* at 1231. The Ninth Circuit concluded that the survey did "not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'" *Id.* And many courts have agreed that "otherwise facially implausible consumer deception claims cannot be redeemed by survey allegations alone." *Puri v. Costco Wholesale Corp.*, No. 21-1202, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021).[6]

Here too, Plaintiffs' purported survey cannot salvage their implausible allegation that the presence of phthalates is material to consumers—at least not in the trace amounts alleged to be present in Kraft Mac & Cheese. Given the ubiquity of phthalates in society and the fact that consumers have grown up eating Kraft Mac & Cheese for generations, common sense—which this Court must apply in ruling on a motion to dismiss—dictates that the presence of trace amounts of phthalates should not have any effect on a reasonable consumer's decision to purchase Kraft Mac & Cheese.[7] The survey Plaintiffs allegedly conducted does nothing to change this outcome.

## III. Plaintiffs' Claims Based on Alleged Misrepresentations Are Not Actionable.

Plaintiffs also claim that the alleged presence of phthalates makes it misleading for Kraft Heinz to use statements like "The Taste You Love," "NO Artificial Dyes," "NO Artificial Flavors," and "No Artificial Preservatives" on the packaging of Kraft Mac & Cheese. CAC ¶ 51.

---

[6] *See also, e.g.*, *Axon v. Florida's Natural Growers, Inc.*, 814 F. App'x 701, 704–05 (2d Cir. 2020) (rejecting the plaintiff's reliance on a consumer survey that did "not render [her] claims plausible"); *Yu*, 2020 WL 5910071, at *5 ("[A]dding surveys cannot alone salvage implausible claims."); *Podpeskar v. Dannon Co.*, No. 16-8478, 2017 WL 6001845, at *4 (S.D.N.Y. Dec. 3, 2017) (holding that the plaintiff's reliance on a "variety of surveys" concerning whether consumers viewed GMO crops as "natural" did not "meet *Twombly*'s insistence that claims be nudged over the line from conceivable to plausible").

[7] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (directing courts to apply their "judicial experience and common sense" in ruling on motions to dismiss); *see also Galanis v. Starbucks Corp.*, No. 16-4705, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (applying "common sense" to dismiss lawsuit alleging Starbucks misrepresented the amount of coffee in its iced beverages).

Notably, Plaintiffs do not assert that these statements are false—*e.g.*, that Kraft Mac & Cheese contains artificial flavors, dyes, or preservatives, or that it does not contain the taste consumers love. Instead, they allege that these statements portray the products as "wholesome, safe, and healthy" (words that do not appear on the packaging) and "lead[] reasonable consumers to believe that the Products . . . do not contain dangerous chemicals or artificial substances, like phthalates." *Id.* This theory of deception is implausible.

Although Plaintiffs assert consumer fraud claims under the laws of eleven different states, those statutes all require Plaintiffs to establish that Kraft Heinz's supposed misrepresentations are likely to mislead a reasonable consumer. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (noting that the consumer fraud statutes of "twelve different states . . . all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers"); *Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 20, 2020) ("Although Plaintiffs allege violations of consumer protection statutes from forty states and the District of Columbia, the parties agree that the critical issue for resolving this motion is whether a reasonable consumer would be misled . . . ."). Here, Plaintiffs have not alleged that any statements on the packaging of Kraft Mac & Cheese—including truthful statements like "NO Artificial Dyes" and puffery statements like "The Taste You Love"—are likely to deceive a reasonable consumer. And to the extent Plaintiffs purport to challenge any claims on Kraft Heinz's website, they cannot do so because they do not allege that they viewed, visited, or relied on the website.

### A. "The Taste You Love," "Gooey, Cheesy Goodness," and "The Part of Parenting That's Impossible to Mess Up" are non-actionable puffery.

Plaintiffs allege that the phrases "The Taste You Love" and "Gooey, Cheesy Goodness," which appear on the packaging of Kraft Mac & Cheese, are misleading because they "lead reasonable consumers to believe that the Products are wholesome, safe, and healthy and do not

contain dangerous chemicals, like phthalates."  CAC ¶¶ 51, 53.  Plaintiffs also allege that the statement "[t]he part of parenting that's impossible to mess up," which appears on Kraft Heinz's website, is misleading for the same reason.  *Id.* ¶ 58.  But these statements are puffery—*i.e.*, "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013).[8]  Because "no reasonable person could rely upon the representations as intended conveyances of fact," these puffery statements are "not actionable as a matter of law."  *Thompson v. Procter & Gamble Co.*, No. 18-60107, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018); *see Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 803 (2006) ("[M]ere puffery cannot form the basis of a consumer fraud claim.").

Here, there can be no dispute that the statement "The Taste You Love" constitutes puffery, as representations about taste are, by definition, "not quantifiable, objective statements."  *PETA v. Whole Foods Mkt. Cal., Inc.*, No. 15-4301, 2016 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) (holding that "Great-Tasting Meat From Healthy Animals" and "Raised Right Tastes Right" were puffery); *see also, e.g.*, *Lugones*, 440 F. Supp. 3d at 241 ("Defendant's advertising, 'WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS,' or more simply, 'WE LOVE OUR HENS,' . . . are paradigmatic examples of puffery.").  It is similarly indisputable that "[t]he part of parenting that's impossible to mess up" is puffery because it is a "vague or general assertion of superiority." *Notification Techs., Inc. v. Parlant Tech., Inc.*, No. 05-89, 2005 WL 8173034, at *3 (S.D. Cal. Jan. 27, 2005) (holding that the defendant's statement that its product "gets parents involved" in their

---

[8] *See also, e.g.*, *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (explaining that statements constituting puffery "'do not provide any concrete representations,' but are instead 'subjective claims about products, which cannot be proven either true or false'") (citations omitted); *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-80352, 2016 WL 4250668, at *2 (S.D. Fla. Apr. 12, 2016) ("Vague or highly subjective claims of product superiority generally fall within the category of non-actionable puffery.").

children's education was puffery). And the use of the phrase "gooey, cheesy goodness" is also textbook puffery. *See, e.g.*, *Truxel v. Gen. Mills Sales, Inc.*, No. 16-4957, 2019 WL 3940956, at *2 (N.D. Cal. Aug. 13, 2019) (holding that the phrase "a world of goodness," as used on cereal labeling, was non-actionable puffery); *Weiss v. Kroger Co.*, No. 14-3780, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8, 2014) (holding that "There's a whole lot of goodness contained in each and every tiny sunflower seed" was "highly subjective non-actionable puffery). Regardless of Plaintiffs' subjective feelings about phthalates, these puffery statements are simply not actionable.

### B. The alleged presence of phthalates does not render the truthful "NO Artificial _____" statements on the packaging false or misleading.

Plaintiffs also allege that the supposed trace amount of phthalates present in Kraft Mac & Cheese makes it misleading for Kraft Heinz to claim that those products contain "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes." CAC ¶¶ 51–52. Plaintiffs do not allege that these statements are false—or, in other words, that Kraft Mac & Cheese *does* contain artificial preservatives, flavors, or dyes. Rather, they suggest that these statements "lead reasonable consumers to believe that the Products are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances, like phthalates." *Id.* ¶ 51. But this theory is not viable, and courts across the country have made clear that the presence of an allegedly "bad" substance does not prohibit a manufacturer from highlighting a product's positive qualities.

*George v. Starbucks Corp.* is directly on point. There, the plaintiffs alleged that Starbucks misled consumers by claiming that its baked goods contained "no artificial dyes or flavors," even though it used a "powerful pesticide," DDVP, to eliminate insects in its stores. No. 19-6185, 2020 WL 6802955, at *1–2 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F. App'x 705 (2d Cir. 2021). In dismissing their lawsuit, the district court held that the presence of DDVP did not render the "no artificial dyes or flavors" claim misleading, as "DDVP is not an artificial dye or flavor" and "[n]o

reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores." *Id.* at *2. In affirming this ruling, the Second Circuit agreed that "[n]o reasonable consumer would believe that these statements communicate anything about the use of pesticides in Starbucks's stores." 857 F. App'x at 707.

The glyphosate cases are also directly on point. In those cases, as here, the plaintiffs attacked various labeling statements (such as "natural," which does *not* appear on the labeling of Kraft Mac & Cheese) as misleading because the challenged products contained trace amounts of glyphosate. Court after court rejected this theory of deception. In *Parks*, for example, the court held that the presence of glyphosate did not render the term "natural" misleading, as "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products." 377 F. Supp. 3d at 247. In *In re General Mills*, the court likewise held that the presence of glyphosate did not render the statement "Made with 100% Natural Whole Grain Oats" misleading, as this statement does not "mean[] that there is no trace glyphosate" in the product "or that a reasonable consumer would so interpret the label." 2017 WL 2983877, at *6. And in *Axon v. Citrus World, Inc.*, the court agreed that it was not deceptive to "call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018).

Here too, as in *George*, *Parks*, *General Mills*, and *Axon*, the alleged presence of trace amounts of phthalates has no bearing on whether Kraft Mac & Cheese contains artificial flavors, preservatives, or dyes. While Plaintiffs suggest that the "NO Artificial _____" statements contribute to a general perception of healthiness (*see* CAC ¶¶ 51–52), that does not salvage Plaintiffs' claims. To the contrary, courts have repeatedly dismissed similar consumer fraud claims where the plaintiff "alleges that a consumer will read a true statement on a package and will then . . . assume

things about the products *other than* what the statement actually says." *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). Absent any allegation that the "NO Artificial _____" statements are in fact false, Plaintiffs have not stated a plausible claim.

### C. Plaintiffs cannot challenge the statements on Kraft Heinz's website because they do not allege that they visited or relied on that website.

In addition to challenging various statements on the packaging of Kraft Mac & Cheese, Plaintiffs also take issue with certain statements on Kraft Heinz's website, kraftmacandcheese.com. In particular, Plaintiffs challenge two specific statements as misleading: (1) Kraft Heinz's statement that it "know[s] moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family"; (2) Kraft Heinz's statement that Kraft Mac & Cheese is "[t]he part of parenting that's impossible to mess up" because "Kraft Mac & Cheese is made with no artificial flavors, preservatives, and dyes."[9] CAC ¶¶ 55–58. Leaving aside that these statements are either puffery or factually accurate (*see supra* § III.A-B), these statements are not actionable because Plaintiffs do not allege that they relied on—or even visited—this website.

Indeed, courts have agreed that a plaintiff cannot sue a defendant for consumer fraud "based on [a] website" when she "does not allege she ever saw the . . . claim on that website."[10]

---

[9] Plaintiffs also note that Kraft Heinz's website represents that Kraft Heinz acknowledges that "phthalates may be introduced into certain products" and states that it is seeking to learn "if there is anything else we can do to reduce or eliminate them." CAC ¶¶ 9, 46, 55. Although Plaintiffs claim that this statement constitutes an "admission" that the presence of phthalates is "information a reasonable consumer would consider important," that is flat-out-false. To the contrary, Kraft Heinz's website makes clear that "[t]he trace amounts of phthalates found in the one limited test of mac & cheese are well below any level of concern"—or, in other words, that the presence of trace amounts of phthalates *should not* be material to reasonable consumers. RJN Ex. 5.

[10] *See also*, *e.g.*, *Chavez v. Church & Dwight Co.*, No. 17-1948, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) ("By failing to allege that he read the statements on [defendant's] website, there is no basis to conclude that [plaintiff] relied on them . . . or that they induced him to purchase the ssupplement."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("[I]f Plaintiff did not see the website and Facebook page beforehand, he could

*Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 666 (N.D. Ill. 201). Here too, because Plaintiffs do not allege that they visited Kraft Heinz's website before deciding to purchase Kraft Mac & Cheese or that it played any role in their purchase, they cannot claim that the any statements on website misled them. This Court should dismiss any claims premised on the website.

## IV. Plaintiffs' Breach of Warranty and Unjust Enrichment Claims Also Fail.

In addition to their consumer fraud claims, Plaintiffs assert claims for breach of express warranty, breach of implied warranty, and unjust enrichment. *See* CAC ¶¶ 90–118. These claims fail for the same reasons as Plaintiffs' state-law consumer fraud claims.

Unjust Enrichment. A claim for unjust enrichment "will stand or fall" with a plaintiff's substantive claims for consumer fraud. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Absent any plausible allegation that Kraft Heinz made any actionable misrepresentations or omissions, Plaintiffs cannot establish Kraft Heinz's "acceptance and retention of the benefit under circumstances that make it inequitable for [Kraft Heinz] to retain it without paying the value thereof." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006); *see Kennedy v. Covidien, LP*, No. 18-1907, 2019 WL 1429979, at *8 (S.D.N.Y. Mar. 29, 2019) (dismissing unjust enrichment claim there the plaintiff did not plausibly allege that the defendant's "product was defective or that the sale was induced through a misrepresentation").

Breach of Express Warranty. When a plaintiff asserts that a defendant's supposedly false of advertising constitutes a breach of express warranty, she cannot prevail on that claim unless she establishes that the advertising was likely to mislead a reasonable consumer. *See, e.g., Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197, at *14 (E.D.N.Y July 10, 2020) (finding

---

not have been injured by them."); *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1367 n.4 (S.D. Fla. 2007) (ignoring allegations based on claims on website where complaint did not allege that representations on website were "relied upon, or even viewed" by the plaintiffs).

that the standard for purposes of a breach of express warranty claim "is the same as that analyzed under New York's consumer protection law"); *Brodsky v. Aldi Inc.*, No. 20-7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (dismissing breach-of-warranty claims where "a reasonable consumer could not plausibly read the label as plaintiffs suggest"). Absent any plausible allegation of deception, Plaintiffs cannot state a claim for breach of express warranty.[11]

Breach of Implied Warranty. Like their breach of express warranty claim, Plaintiffs' claim for breach of the implied warranty of merchantability fails because Plaintiffs have not plausibly alleged that the labeling of Kraft Mac & Cheese is deceptive or that the products are unfit for consumption. The breach of implied warranty claim also fails because Plaintiffs are not in privity with Kraft Heinz, as is required to state a breach of implied warranty claim.[12] As Plaintiffs admit, Kraft Mac & Cheese is sold through "numerous retail and online outlets"—and not sold directly by Kraft Heinz to consumers. CAC ¶ 48. That forecloses any plausible allegation of privity.

## **CONCLUSION**

This Court should dismiss Plaintiffs' lawsuit without further leave to amend.

---

[11] To the extent Plaintiffs' express warranty claim is premised on the alleged failure to disclose the presence of phthalates, that claim also fails because a "breach of express warranty claim . . . cannot be premised on an omission." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997); *see also Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988) (noting that omissions are "not affirmative representations of any sort and thus cannot support a warranty claim, because express warranties must be explicit").

[12] *See Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *Manley*, 417 F. Supp. 3d at 1121 ("[U]nder Illinois law, a claim for breach of implied warranty . . . requir[es] privity of contract."); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (noting that New York law "require[s] privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic").

Dated:  September 23, 2022

Respectfully submitted,

By:  /s/ Dean N. Panos
Dean N. Panos (ARDC No. 6203600)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone:  (312) 923-2765
Facsimile:  (312) 527-0484
dpanos@jenner.com

Attorneys for Defendant
The Kraft Heinz Company