**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GABRIELLE STUVE, JESSICA NICODEMO, KELLY TARANTINO, MICHELLE FRANCIONE, LANA MOSKOWITZ, AARON CLARKE, and MICHELLE DEVERA, on behalf of themselves and all others similarly situated,** | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **No. 21-CV-1845** |
| **THE KRAFT HEINZ COMPANY a/k/a, KRAFT HEINZ FOODS COMPANY,** | ) ) ) | **Judge Rebecca R. Pallmeyer** |
| **Defendant.** | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs, who purchased Kraft's popular macaroni and cheese product ("Kraft Mac & Cheese"), allege that Kraft violated state laws by deceptively labeling the product. Plaintiffs have filed this action on behalf of themselves and a putative multi-state class of consumers, alleging that the Kraft Mac & Cheese label omits information and misleads purchasers into believing that Kraft Mac & Cheese is free from phthalates—plasticizing chemicals that, at certain levels, can be dangerous to consume. Plaintiffs filed this complaint in federal court pursuant to the Class Action Fairness Act of 2005, which establishes federal jurisdiction when, as here, at least one class member is of diverse citizenship from a defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiffs' amended consolidated class action complaint alleges four counts: violations of multiple state consumer fraud and deceptive business practice laws (Count I); unjust enrichment (Count II); breach of implied warranty (Count III); and breach of express warranty (Count IV). On September 23, 2022, Kraft moved to dismiss all claims. For the reasons discussed below, the motion is granted in part and denied in part. Plaintiffs' claims for false or misleading statements (Count I), breach of implied warranty for all non-Massachusetts Plaintiffs (Count III), and breach

of express warranty (Count IV) are dismissed.  Plaintiffs' claims for material omissions (Count I), unjust enrichment (Count II), and Plaintiff Michelle Francione's breach of implied warranty claim (Count III) survive this motion.

## BACKGROUND

Each day, Kraft sells more than a million boxes of Kraft Mac & Cheese.[1]  (Amended Consolidated Class Action Complaint ("CAC") [60] ¶ 1.)  Kraft's signature blue box touts the product's positive attributes.  On what appears to be a ripped-out piece of notebook paper in the lower right-hand corner of the package's front side, the box tells consumers that inside is "The Taste You Love" with "NO Artificial Flavors," "NO Artificial Preservatives," and "NO Artificial Dyes." (*Id.* ¶ 51.)  The backside of the cardboard container lists "even more reasons to love it," including the dish's "gooey, cheesy goodness."[2]  (Ex. 3 to Def.'s Request for Judicial Notice in Support of its Motion to Dismiss Consolidated Class Action Complaint (hereinafter "RJN") [64-3].)

In this case, Plaintiffs from eleven states allege that Kraft has violated their states' consumer fraud laws.  They claim that Kraft omits material information from its Kraft Mac & Cheese label and misleads consumers into believing that the product is healthy, wholesome, nutritious, and free from artificial substances, including harmful synthetic toxins.  (CAC ¶ 1.) Specifically, Plaintiffs allege that Kraft has violated its duty to disclose to consumers that the product contains, or is at risk of containing, "ortho-phthalates," also known as "phthalates." (*Id.*)

---

[1] At the time of Plaintiff's alleged injuries, Kraft sold at least 18 types of "Blue Box" Kraft Mac & Cheese.  (CAC ¶ 24.)  The claims here concern all types of Kraft Mac & Cheese, as they all contain cheese powder.

[2] Plaintiffs refer to the labeling of Kraft Mac & Cheese throughout their complaint and premise their claims on alleged omissions on the labeling.  Because the complaint incorporates the packaging by reference, the court takes judicial notice of it.  *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'") (quoting *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *see also, e.g.*, *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 400 n.2 (E.D.N.Y. 2010); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).

Plaintiffs allege that phthalates "enter food during processing and packaging" and "escape from food contact materials such as processing equipment and food packaging material into the cheese powder." (*Id.* ¶ 28.)

Phthalates are synthetic chemicals that make plastics flexible. (*Id.* ¶ 28.) They are also endocrine-disrupting chemicals, and scientific studies have linked excessive consumption of phthalates to adverse health effects including decreased semen quality in men; endometriosis in women; and asthma, allergies, and bronchial obstruction in children. (*Id.* ¶¶ 3, 35, 38, 39.) Scientific findings also show that pre-natal exposure to phthalates may be dangerous to the fetus, potentially leading to harms after birth including neurodevelopment problems and genital birth defects in boys. (*Id.* ¶¶ 4, 40.)

In 2017, the Coalition for Safer Food Processing and Packaging (the "Coalition"), a group of nonprofit health and food safety advocacy organizations, tested several cheese products—including cheese powder in ten varieties of macaroni and cheese produced by various manufacturers—and published the results. (*Id.* ¶ 29.) According to the study, the Coalition detected phthalates in nine of the ten tested cheese powder products and found that the phthalate levels in those cheese powders were on average four times higher than in the 15 natural cheeses tested. (*Id.*) Specifically, the Coalition found an average of 106 parts per billion (or .106 milligrams per kilogram of dry product) of phthalates in the ten tested varieties of macaroni & cheese, with a range between 34 and 218 parts per billion.[3] (*See* "Testing Finds Industrial Chemical Phthalates in Cheese" (hereinafter "The Coalition's Study"), Ex. 4 to RJN [64-4].)

---

[3] The court takes judicial notice of the Coalition's study, which is incorporated by reference in the Plaintiffs' complaint. *See Brownmark Films*, 682 F.3d at 690; *see also*, *e.g.*, *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 925 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) ("The websites in this case are clearly central to the complaint and are referred to in it, and so for that reason they are being considered in deciding the pending motion to dismiss.") (citation and internal quotation marks omitted); *Pennington v. Travelex Currency Servs.*, Inc., 114 F. Supp. 3d 697, 703 n.7 (N.D. Ill. 2015).

The study itself did not specifically identify Kraft as the producer of one of the tested cheese products, but, on June 14, 2017, the Coalition issued a public letter to Bernardo Hees, Kraft's Chief Executive Officer, stating that it had detected phthalates in Kraft's products and asking to meet with Kraft to discuss the matter.  (CAC ¶ 30.)  The letter noted that Kraft is the leading U.S. seller of macaroni and cheese and asked Kraft to "eliminate toxic industrial chemicals known as ortho-phthalates from [its] food products."  (*Id.*)  The letter also enumerated health concerns associated with phthalates and stated that the Coalition planned to launch a public outreach campaign regarding the issue.  (*Id.*)

Kraft is aware that some consumers are concerned about phthalates.  On its website, the first of its published "Frequently Asked Questions" queries, "Should I be concerned about food and phthalates?"  (*Id.* ¶ 9.)  Kraft's response acknowledges that customers have inquired about phthalates in its Mac & Cheese and states, "We take your questions about phthalates and food safety and quality very seriously because we know moms and dads trust Kraft Mac & Cheese as a quality, tasty, and safe food for the family."  (*Id.*)  The website also seeks to dispel concerns about phthalates in its Mac & Cheese by stating that

> [t]he safety of phthalates has been assessed by the US Food and Drug Administration and other authorities, such as the Centers for Disease Control.  The trace levels found in the one limited test of mac & cheese are well below any level of concern.  Hundreds of servings of mac & cheese would need to be consumed daily over an entire lifetime in order to exceed levels determined as safe.[4]

(Ex. 5 to RJN [64-5].)

In a public statement, the Coalition rebuffed Kraft's effort to minimize the significance of the Coalition's finding.  Although language on Kraft's website assures consumers that the amount of phthalates detected is many times "lower than levels that scientific authorities have identified

---

[4]     The court takes judicial notice of the portions of Kraft's website that are referenced in Plaintiffs' complaint.  *See Brownmark Films*, 682 F.3d at 690; *Fortres*, 947 F. Supp. 2d at 925; *Pennington*, 114 F. Supp. 3d at 703 n.7; *see also Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (holding that district court properly considered the contents of the defendant's website in ruling on its motion to dismiss).

as acceptable," the Coalition noted, the "acceptable level" Kraft referred to accounts for phthalate intake from all sources combined, not from a single product alone. (CAC ¶ 31.) Essentially, the Coalition asserted—and Plaintiffs allege in their complaint—that a Kraft Mac & Cheese packet could indeed constitute a large enough slice of a person's daily-intake pie chart to warrant a warning label. Because the effect of phthalates is cumulative, Plaintiffs urge that even if an amount of phthalates in the product is small in absolute terms, the amount is significant relative to other sources of phthalate exposure. This relative significance may move a consumer away from choosing the product in favor of a potentially healthier option. (*See id.* ¶¶ 31, 34–37, 77.)

For its part, the FDA has not set a specific threshold for the level of phthalates it allows in food products. (*Id.* ¶ 33.) The FDA has, however, promulgated regulations and issued findings about the safety of phthalates in other contexts. For example, the FDA permits the use of phthalates in food contact applications, such as processing tools and packaging materials. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss [63] (hereinafter "Def.'s Br.") at 1, 3, 7 (citing 21 C.F.R. § 178.3740).)

Plaintiffs originally filed this suit on April 6, 2021, but the court stayed proceedings, on Plaintiffs' motion, pending a ruling on motion to transfer a related case from the Eastern District of New York. Judge Azrack of the Eastern District of New York granted that motion on May 26, 2022. *Tarantino v. The Kraft Heinz Company*, No. 1:22-cv-2807 (E.D.N.Y. May 26, 2022). On August 19, 2022, Plaintiffs filed an amended Consolidated Class Action Complaint [60], asserting that Kraft has been fully aware of the presence of risk of phthalates in Kraft Mac & Cheese since at least 2017, but has chosen not to disclose this information to consumers. Furthermore, Plaintiffs assert, Kraft makes deceptive statements in its macaroni and cheese packaging that create the overall impression that its macaroni and cheese products are "wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances like phthalates." (CAC

¶ 50.)  Plaintiffs bring claims on behalf of themselves and a multi-state class[5] under multiple consumer fraud and business practice laws[6] (Count I); unjust enrichment (Count II); breach of implied warranty (Count III); and breach of express warranty (Count IV).  On September 23, 2022, Kraft moved the court to dismiss Plaintiffs' lawsuit for failure to state a claim.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 420 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To meet this standard, the complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678)).  In making that determination, the court takes all Plaintiffs' factual allegations as true and draws all reasonable inferences in their favor.  *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022).  The court also applies "judicial experience and common sense" to rule on the motion.  *See Iqbal*, 556 U.S. at 679.

---

[5] The complaint defines the class as "[a]ll persons who, during the applicable statute of limitation period to the present, purchased Kraft Mac & Cheese Products in California, Florida, New York, Connecticut, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey and Washington for personal and/or household use, and not for resale."  (CAC ¶ 61.)

[6] Plaintiffs allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*); the California Consumers Legal Remedies Law, Cal. Civ. Code §§ 1750 *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.; the Florida Deceptive and Unfair Trade Practices Act § 501.201; the New York Consumer Law for Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, and New York Consumer Law for False Advertising, N.Y. Gen Bus. Law § 350; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b; the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1 et seq., and Massachusetts G.L. c. 266 § 91; the Michigan Consumer Fraud Act, Mich. Stat. § 445.901 *et seq.*; the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68-325F.70; the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and the Washington Unfair Business Practices – Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq.*

Kraft lodges four arguments supporting dismissal: (1) all of Plaintiffs' claims are preempted because Kraft has complied with FDA's safety assessments concerning phthalates; (2) Plaintiffs' failure-to-disclose claims are preempted on other grounds and are otherwise implausible; (3) Plaintiffs' misrepresentation allegations are nonactionable because the statements they challenge are either true or puffery; and (4) Plaintiffs' common law claims necessarily fail alongside their substantive consumer fraud claims. The court addresses these issues in turn.

## I.        FDA Regulation Preemption

Kraft contends that the court must dismiss Plaintiffs' suit because all of their claims are preempted. (Def.'s Br. [63] at 10.) "[U]nder the Supremacy Clause, federal law preempts state laws that interfere with, or are contrary to, federal law," *Union Pac. R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011) (internal quotation marks omitted), including state laws that "prevent or frustrate the accomplishment of a federal objective." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000). To successfully raise an affirmative defense of conflict preemption—the kind of preemption Kraft argues for here—a defendant must demonstrate either "an actual conflict between state and federal law such that it is impossible for a person to obey both," or that "state law stands as obstacle to fully accomplishing the objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 646–47 (7th Cir. 2019). Notably, "[c]onflict preemption requires complete impossibility—not mere inconvenience or hardship," meaning preemption only exists if it is impossible for a defendant to comply with both laws at the same time. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013).

Kraft argues that imposing liability on it for failing to disclose the alleged presence of phthalates in its products would necessarily frustrate the FDA's determination that phthalates can "be safely used" in food contact applications. *See* 21 C.F.R. § 178.3740. The regulation at issue, however, does not directly refer to the presence of phthalates in food products; it instead refers to the presence of phthalates in objects used in the process of preparing and distributing food products. Specifically, the regulation states that certain substances, including a number of

phthalates, "may be safely used as plasticizers in polymeric substances used in the manufacture of articles or components of articles intended for use in producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food." *Id.* Defendant reads this regulation as compelling an inference that the FDA deems it safe for phthalates to end up in the final food product. (*See* Def.'s Reply [70] at 3 ("The FDA's decision to promulgate this regulation cannot be reconciled with Plaintiffs' unfounded assertion that *any* amount of phthalates renders a food product unsafe.") (emphasis in original).) This appears to be an overstatement; even if Kraft is correct that FDA regulations must be interpreted as allowance for the presence of some amount of phthalates in consumable food, the FDA regulation would not make it impossible for Kraft to comply with state labeling laws. In any event, the regulation does not equate to a statement that it is safe for phthalates to be present in the consumable food product.

Kraft also argues that Plaintiffs' claims are preempted because the amount of Di(2-ethylhexyl)phthalate ("DEHP")—one of the most common phthalates—they allege to be in a box of Kraft Mac & Cheese does not come close to approaching the amount that the FDA has deemed a "tolerable intake" via oral exposure. Kraft asks the court to take judicial notice of the FDA's statements regarding phthalates in the context of medical devices published in an undated white paper attached to Kraft's request for judicial notice [64-2]. Kraft is correct that "[d]istrict courts can take judicial notice of information on government websites." *Bartnett v. Abbott Labs.*, 492 F. Supp. 3d 787, 798 n.2 (N.D. Ill. 2020) (citing *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003)). The court has been unable to find the paper or the information it contains on that site identified by Kraft,[7] but Kraft has attached a copy of the white paper as an exhibit, and Plaintiffs have acknowledged that the exhibit "consist[s] of information available on FDA's website." (Pls.' Resp. to RJN [69] at 2.) Assuming the information is, indeed, publicly available on the FDA's

---

[7] The only public website on which the court found a PDF of the paper belonged to the Indian Centre for Plastics in the Environment. *See* http://icpe.in/pdf/ Safety_assessment_Diphthalate.pdf.

website, the court will take judicial notice of the document, but it will not assume the truth of the facts it states.[8]  *See, e.g.*, *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1044 (N.D. Ill. 2009) ("[A] court may take judicial notice of documents filed with the SEC for the purpose of showing what statements the documents contain, but not for the proof of the facts stated therein.") (internal quotations omitted).  In the undated white paper, the FDA assessed the risks associated with plastics in medical devices and stated that a "tolerable intake" of the phthalate DEHP is approximately 0.04 mg/kg/day—that is, 0.04 milligrams per day for every kilogram of body weight. (*See* "Safety Assessment of Di(2-ethylhexyl)phthalate (DEHP) Released From PVC Medical Devices," Ex. 2 to RJN [64-2] at 4.)  This means a person's tolerable intake of DEHP depends on body weight; you multiple a person's body weight (in kilograms) by 0.04 to calculate how many milligrams of DEHP that person can tolerate per day.  For a smaller person (one who weighed just 110 pounds), the FDA assessed the "tolerable intake" of DEHP would be approximately 2 milligrams per day; for a person of 165 pounds, 3 milligrams per day; and for a person who weighs 200 pounds, 4 milligrams per day.  (*See id.*)

Kraft relies on this 0.04 mg/kg/day figure to support its arguments that the court should dismiss this suit.  Kraft compares the amount of phthalates that the Coalition allegedly found in its Mac & Cheese with the daily tolerable intake of DEHP as set forth in the white paper.  Kraft justifies this move first by pointing out that the Coalition's study found that DEHP was found more often, and at much higher concentrations, than other phthalates in the cheese powder packets (*See* CAC ¶ 29).  For its calculations, Kraft assumes that all detected phthalates are DEHP, that

---

[8]    Although Plaintiffs concede the information appears on the FDA website, they argue that the court should not consider the white paper because doing so would confuse the issues, waste time, and distract from the main issue of this case.  *See* FED. R. EVID. 403; *see also Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 5825, 2006 WL 6505615, at *3 (N.D. Ill. Nov. 16, 2006) ("courts refuse to take even 'mandatory' judicial notice when the fact to be noticed is inadmissible under Rule 403.").  At this time, the court recognizes the limited probative value of an undated assessment about one phthalate in the medical-device context in a suit concerning phthalate consumption through food.  At a later stage of litigation, when the record is more developed, Plaintiffs may raise Rule 403 concerns anew.

Kraft Mac & Cheese contained the highest concentration of any tested product (.218 milligrams per kilogram of product), and that the entirety of the Mac & Cheese box (206 grams) is composed of cheese powder. If these numbers were to hold, a box of Kraft Mac & Cheese would contain just 0.0449 milligrams of phthalates. (Def.'s Br. [63] at 7.) Based on these numbers, Kraft argues, "a consumer could eat fifty boxes of Kraft Mac & Cheese (or 150 servings) each day and still ingest only 2.45 milligrams of phthalates," which is "less than the 'tolerable intake' of DEHP deemed safe in a 165-pound adult (3 milligrams)." (*Id.* at 8.) With these assumptions, Kraft says a child weighing 20 kilograms (roughly 44 pounds) "would need to eat over seventeen boxes of Kraft Mac & Cheese each day—which is *physically impossible* for a child of that size—to exceed the tolerable intake of DEHP alone." (*Id.* (emphasis in original).) Kraft notes, further, that these numbers vastly overestimate the amount of phthalates in Kraft Mac & Cheese because they assume the entire box consists of the cheese powder packet, when in reality the bulk of the weight comes from dry pasta, which is not alleged to contain phthalates at all.

This information may well position Kraft to move swiftly for summary judgment, but the court does not agree that it requires dismissal at the pleading stage. Kraft derives its calculations from the FDA's assessment of risk exposure to phthalates "released from PVC medical devices," not exposure to DEHP in food. (*See generally* Ex. 2 to RJN [64-2].) It is possible that the body absorbs phthalates differently through oral exposure to the chemical by means of PVC in medical devices than through oral and digestive exposure from food. Whether the "tolerable intake" level identified by the FDA in the medical-device context is also applicable to food is a question of fact, and the court will not assume its truth for the purposes of dismissing Plaintiffs' suit on this motion.

The cases Kraft relies on do not compel a different outcome. For example, in *Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849, 851 (N.D. Cal. 2019), the plaintiff claimed the defendant's cookies were adulterated because they contained partially hydrogenated oil ("PHO"). The court held Backus's claims preempted because, during the time he was buying the cookies, no federal law deemed PHO unsafe; to the contrary, a federal statute expressly stated that "PHO

would not be considered unsafe or adulterated under federal law" until 2018 (three years after Backus's latest alleged purchase). *See id*. at 852, 855; *see also Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1003, 1013–16 (S.D. Cal. 2016) (finding state-law claims challenging use of PHO prior to 2016 preempted because Congress expressly stated that a PHO ban would not be effective until 2018. There is no analogous federal law on the books here.

*Nemphos v. Nestle Water North America, Inc.*, 775 F.3d 616, 617 (4th Cir. 2015) is similarly distinguishable. There, the court found that plaintiff's failure-to-warn and false advertising claims were preempted because they sought to hold the defendant liable for using allegedly "excessive" amounts of fluoride in its water bottles, but the plaintiff did not allege that the fluoride concentrations were "above the thresholds set by the FDA." *Id.* at 624. Here, by contrast, the FDA has not set a safety threshold for phthalates in food, so there is no such conflict preemption. *Cf. Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-cv-6664, 2020 WL 5910071, at *6 (N.D. Cal. Oct. 6, 2020) (finding preemption because the FDA regulates pesticides and does not require them to be disclosed on food labels if they are present in "*specified* trace amounts" (emphasis added)).

Because Kraft has not shown that it is impossible for it to comply with both federal and state law, nor that Plaintiffs' the consumer fraud laws here stand as an obstacle to fully achieving the goals of Congress, the court declines to find Plaintiffs' claims preempted at this time.

## II. Failure-to-Disclose Claim (Count I)

In Count I, Plaintiffs claim that Kraft violates consumer fraud laws across several states by omitting from the Kraft Mac & Cheese label information regarding the presence (or risk of presence) of phthalates in the product. Kraft argues that this claim should be dismissed for two reasons. First, Kraft argues that the claim is expressly preempted by the Nutrition Labeling & Education Act ("NLEA"). Second, Kraft contends that the claims fail because the alleged presence of phthalates is not material to reasonable consumers.

### A.    Preemption under the Nutrition Labeling & Education Act

The NLEA includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law.  21 U.S.C. § 343-1(a).   The phrase "not identical to" means that the state requirement may not impose, either directly or indirectly, obligations not imposed by the statute or FDA's implementing regulations.  21 C.F.R. § 100.1(c)(4).   Because identity, not consistency, is the test, a plaintiff cannot avoid preemption by arguing that the state-law labeling requirement is merely "consistent with the requirements imposed by the Food, Drug, and Cosmetic Act" ("FDCA").  *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).  Said differently, "[s]tates can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements."  *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) (citing *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014)); *see also In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (noting that, under 21 C.F.R. § 100.1(c)(4), "state law cannot impose obligations beyond, or different from, what federal law requires").  Thus, if Kraft labels its Mac & Cheese in a manner "expressly permitted by FDA regulations," Plaintiffs' labeling claims are preempted.  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013); *see also Johnson v. Organo Gold International, Inc.*, No. 15-cv-390, 2016 WL 2771124, at *6–7 (D. Del. May 13, 2016) (finding preempted the claim that defendant needed to disclose the purported presence of the supplement Ganoderma Lucidum on its nutrition label because "[c]ontent information for particular nutrients or food components can only be included in the Nutrition Facts label" as identified by FDA regulations for disclosure).

Kraft argues that Plaintiffs' claims are preempted because the FDA exempts Kraft from disclosing the alleged presence of phthalates on the Kraft Mac & Cheese box.  The FDA has issued a regulation exempting manufacturers from the obligation to disclose "[i]ncidental additives

that are present in a food at insignificant levels and do not have any technical or functional effect in that food."  21 C.F.R. § 101.100(a)(3).  "Incidental additives" include "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food" so long as they are "not food additives," or, if they are food additives, "are used in conformity with regulations established pursuant to section 409 of the act."  21 C.F.R. § 101.100(a)(3)(iii).  According to Plaintiffs' own allegations, phthalates "enter food during processing and packaging" and "escape from food contact materials such as processing equipment and food packaging material into the cheese powder."  (CAC ¶ 28.)  Accordingly, the phthalates in Kraft Mac & Cheese are incidental additives. Kraft contends it uses phthalates "in conformity" with the FDA regulations implementing the FDCA, in that those regulations permit the use of phthalates in food contact applications such as conveyor belts and packaging equipment.  21 C.F.R. § 178.374.  Kraft thus claims it is exempt from disclosing the presence of the phthalates in its macaroni and cheese under 21 C.F.R. § 101.100(a)(3)(iii).[9]

The court cannot determine on the pleadings alone that this exemption applies, because whether phthalates are present only at an "insignificant level" is a question of fact, yet to be resolved.  While few other courts have analyzed this issue, Plaintiffs note the analysis in *Holt v. Foodstate, Inc.*, No. 15-cv-78, 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015).  The *Holt* plaintiffs alleged that the defendant's vitamin products contained "'magnesium stearate, calcium stearate, or any other stearate/stearic acid' that 'may be harmful and undesirable to consumers,'" but the products' labels omitted any mention of these substances.  *Id.* at *1.  Like Kraft, the *Holt* defendant

---

[9]     Plaintiffs argue that phthalates fall outside the ambit of 21 C.F.R. § 101.100(a)(3)(iii) because they are "unequivocally considered 'food additives' under the FDCA." (Pls.' Resp. [68] at 8.)  The purpose of 21 C.F.R. § 101.100(a)(3)(iii), however, is to define certain "incidental additives" that manufactures need not disclose.  Plaintiffs' interpretation violates the general rule that a court should construe a regulation so as to give effect to all of its provisions. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 476–77 (2003).  The court thus agrees with Kraft's interpretation of the interlocking parts of the regulatory scheme but, for the reasons discussed above, concludes that whether a regulatory labeling exemption here is a question that cannot be resolved on a motion to dismiss.

argued that the NLEA and 21 C.F.R. § 100.100(a)(3)(iii) expressly preempted the plaintiffs' claims. *Id.* at *3. The court disagreed, noting that legislative history shows that the NLEA does not preempt "false or misleading label" claims. *Id.* at *4 (recognizing that the express preemption section of 343-1 does not enumerate "false or misleading label" suits). The *Holt* court concluded that whether the allegedly harmful incidental additives were present in "insignificant levels" was a question of fact more appropriate for summary judgment or trial. *Id.*

Kraft's attempt to distinguish *Holt* is unpersuasive. Kraft notes that, in *Holt*, the plaintiffs did not specify the amount of the challenged substances they believed to be present in the defendant's products. By contrast, Kraft argues, "Plaintiffs rely on the Coalition's report, which suggests that the cheese powder in Kraft Mac & Cheese possibly contains—at the absolute most—218 parts per billion of phthalates, which is an 'insignificant' amount by any definition." (Def.'s Reply [70] at 7.) Plaintiffs themselves allege that the phthalates in Kraft Mac & Cheese are present in very small amounts, but do not concede that this means phthalates are present at "insignificant levels." Indeed, Plaintiffs maintain that even a very small amount of phthalates may be significant to consumers because "phthalates appear to have more serious effects at lower levels than at higher levels" (CAC ¶ 34) and also because of the chemicals' cumulative effects. (*See id.* ¶¶ 2, 37, 46.) As before, Kraft may be entitled to a prompt summary judgment ruling, if it can establish that the amount of phthalates in Kraft Mac & Cheese is, in fact, "'insignificant by any definition," but the court declines to make that determination at the pleading stage. (*See* Def.'s Reply [70] at 7.)

The court disagrees with Kraft that the "logical conclusion of Plaintiffs' position is that a court can *never* determine at the pleading stage that 21 C.F.R. § 100.100(a)(3) preempts a plaintiff's claim, as a plaintiff could always claim that a product contains more than 'insignificant levels' of an incidental additive." (Def.'s Reply [70] at 7.) In this case, Plaintiffs expressly contest the meaning of "insignificant level" and have alleged that consumers care about the amount of phthalates in Kraft Mac & Cheese even in very small amounts. Plaintiffs in other cases may not

have made such arguments or allegations; in those circumstances, 21 C.F.R. § 100.100(a)(3) might well support dismissal on motion. As the court reads the cases Kraft cites on this score, the meaning of "insignificant level" in context of the plaintiffs' claims was not briefed. *See In re Bisphenol-A (BPA) Plastic Prods. Liab. Litig.*, No. 08-cv-1967, 2009 WL 3762965, at *5 (W.D. Mo. Nov. 9, 2009) (finding 21 C.F.R. § 100.100(a)(3) preemption, but not discussing the "insignificant level" element); *Lateef v. Pharmavite LLC*, No. 12-cv-5611, 2012 WL 5269619, at *3 (N.D. Ill. Oct. 24, 2012) (finding 21 C.F.R. § 100.100(a)(3) preemption when plaintiff conceded claims were preempted, and not discussing the "insignificant level" element). Whether the 21 C.F.R. § 100.100(a)(3) labeling exemption applies is a question of fact not resolvable on the pleadings alone.[10]

### B. Materiality to Reasonable Consumers

Finding that Plaintiff's failure-to-disclose claim of Count I is not preempted, the court turns to that claim's elements. To prevail on a failure-to-disclose claim, a plaintiff must show that the "omitted information was material," meaning that "a buyer would have acted differently knowing the information." *Manley v. Hain Celestial Grp. Inc.*, 417 F. Supp. 3d 1114, 1118 (N.D. Ill. 2019) (internal quotation marks and alterations omitted); *see also Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (citations and internal quotation marks omitted).

Kraft argues that the amount of phthalates allegedly present in its Mac & Cheese is too miniscule to be material to reasonable consumers. Kraft likens the present case to a line of cases concerning the herbicide glyphosate. In those cases, courts dismissed plaintiffs' claims based on

---

[10]     The parties make additional arguments about whether the NLEA's savings clause, which "expressly exempts safety disclosures from preemption," is applicable here. *See* Pub. L. 101-535, § 6(c)(2). Because the court has determined that, on this record, there is no NLEA preemption for other reasons, it need not address the parties' arguments regarding the savings clause here.

a finding that the alleged "presence of negligible amounts" of a harmful substance in a defendant's product "is not likely to affect consumers' decisions in purchasing the product and is thus not material."  *See, e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (dismissing lawsuit premised on defendant's alleged failure to disclose the presence of glyphosate in dog food labeled as "natural"); *see also In re Gen. Mills Glyphosate Litig.*, No. 16-cv-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("[I]t is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label. It would be nearly impossible to produce a processed food with no trace of any synthetic molecule.").  In those cases, unlike this one, the plaintiffs expressly alleged that the products contained "trace amounts" of glyphosate.  *Parks*, 377 F. Supp. 3d at 247 ("Parks asserts that the Products contain trace amounts of glyphosate, but not that the Products are composed of unnatural ingredients."); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 298387, at *1 ("Plaintiffs claim that 'the oats are most likely the source' of the trace amounts of glyphosate. . . . ").  Here, Plaintiffs have not characterized the phthalates at issue as a "trace amount," and they take issue with the manufacturing process under Kraft's own control.  Kraft's factual defense that its products contain only insignificant or harmless amounts of phthalates may be determinative at a later stage of this litigation, but not on the pleadings.

In this case, moreover, the Plaintiffs have plausibly alleged that reasonable consumers do care about the presence of phthalates in their food, even in small amounts.  As a matter of common sense, it is plausible that a reasonable consumer would choose to avoid foods at risk of containing phthalates in light of the list of health problems allegedly caused by phthalate consumption—including endocrine disruption, cancer, and neurodevelopmental problems.  It is not obvious from the pleadings that safety risks associated with even small amounts of phthalates are "non-existent and hypothetical" such that Kraft had no duty to disclose the presence of phthalates in its macaroni and cheese to consumers.  *Cf. Decker v. Mazda Motor of Am., Inc.*,

No. 11-cv-873, 2013 WL 12129281, at *8 (C.D. Cal. Mar. 29, 2013) (declining to certify a class of car purchasers to pursue a design defect claim because defendant car manufacturer had "no duty to disclose a close a non-existent and hypothetical safety risk" generated by the defect).

Content on Kraft's own website arguably confirms this. That content reflects Kraft's understanding that its customers consider the presence of phthalates in food to be important information. (*See* CAC ¶ 9.) Kraft argues that "nothing about [its] website suggests that phthalates are material to reasonable consumers" (Def.'s Reply [70] at 10), but the website itself states that Kraft "take[s] your questions about phthalates and food safety and qualify very seriously." (Ex. 5 to RJN [64-5].) Kraft contends that its website tends to show "the supposed presence of phthalates should *not* be material to any reasonable consumer" because the website advises visitors that "[t]he trace level of phthalates" allegedly detected by the Coalition are "well below any level of concern." (Def.'s Reply [70] at 10.) At a minimum, however, the website confirms that Kraft is conscious of its consumers' concerns about phthalates and has expended resources in responding publicly to those concerns. Absent evidence to the contrary, Kraft's acknowledgement of consumer concerns supports a finding that it is plausible that phthalate content in food, even in small amounts, is material to reasonable consumers.

Further supporting their materiality claims, Plaintiffs have alleged that survey data shows consumers do care about the presence of phthalates in food. Plaintiffs' counsel asked 400 adult consumers who bought boxed macaroni and cheese within the preceding six months if the presence or risk of even a small amount of phthalates in products would be important to their purchasing decision, and approximately 89.5% answered that it would be either important or very important. (CAC ¶ 10.)

Because the court accepts the allegations in the complaint as true and draws all reasonable inferences in Plaintiffs' favor at this stage of the litigation, it declines Kraft's invitation to discard the survey construction as biased or flawed. In several of the cases Kraft cites, courts discarded surveys because the questions asked in those surveys did not elicit responses

congruent with proving an element of the plaintiffs' claims. *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 164 (S.D.N.Y. 2021) (survey demonstrating 43% of respondents "believed the origin of the vanilla taste comes from the vanilla plant" does not demonstrate "that over 43% of the respondents believed the flavor in Defendant's product came *predominately or exclusively* from vanilla beans—which is what Plaintiffs allege") (emphasis in original); *Puri v. Costco Wholesale Corp.*, No. 21-cv-1202, 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) (survey showing that "more than two-thirds" of "over four hundred" consumers who viewed a label "expected the Product would contain chocolate and not chocolate substitutes" did not support plaintiff's primary assertion that "to be properly considered 'chocolate,' a product must be made chiefly from cacao beans").[11] Here, by contrast, Plaintiffs allege that the survey asked whether "the presence or risk of even a small amount of phthalates" would be important to consumers' purchasing decisions—a question speaking directly to the materiality element of Plaintiffs' claims.

Kraft's strongest challenge to Plaintiffs' survey allegations rests on *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019), in which plaintiffs' survey purportedly showed that consumers understood the term "diet soda" to mean that the drink would "either help them lose weight, or help maintain or not affect their weight." In *Becerra*, the district court concluded, and the Ninth Circuit agreed, that the survey did not change the fact that "a reasonable consumer would still understand 'diet' in this context to be a relative claim about the calorie or

---

[11]    Kraft's supplemental cases are also distinguishable; they involve surveys of customers concerning their understanding of the word "natural" in various food labels, a matter not at issue here. *See Axon v. Florida Natural Grower's, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (upholding district court's conclusion that a survey regarding the word "natural" on a food label was insufficient to render plausible claims concerning the word "natural" in a brand name); *Yu*, 2020 WL 5910071, at *6 (finding a generic survey about consumers' interpretation of the word "natural" does not compel the court to read in facts that are otherwise insufficiently pleaded); *Podpeskar v. Dannon Co.*, No. 16-cv-8478, 2017 WL 6001845, at *4 (S.D.N.Y. Dec. 3, 2017) (similar); *In re KIND LLC "Healthy & All Natural" Litig.*, — F. Supp. 3d —, 2022 WL 4125065, at *10 (S.D.N.Y. Sept. 9, 2022) (discussing use of survey evidence on a motion for summary judgment, not a motion to dismiss).

sugar content of the product," rather than a claim about weight loss. *Id.* at 1231. The Court of Appeals noted that the survey did "not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'" *Id.* But there is a significant difference between a survey asking about a person's understanding of the meaning of a word in context and one asking about a person's own concerns. Whereas the *Becerra* survey could be measured against the "prevailing understanding" of reasonable consumers, the survey results here speak to purchasing concerns of the respondents themselves. The reasonableness of those concerns depends on whether those phthalates are present in an "insignificant amount," which is an open question of fact at this stage of the litigation. Because the court draws all inferences in Plaintiffs' favor, it will not discard the alleged survey data as flawed at this time.

III.    **Misrepresentation Claims (Count I)**

Plaintiffs additionally claim in Count I that several statements on the packaging of Kraft Mac & Cheese—such as "NO Dyes," "NO Artificial Flavors," "NO Artificial Preservatives," and the phrase "gooey, cheesy goodness"—are misleading due to the alleged presence of phthalates in those products. The state laws under which Plaintiffs bring their claims "'all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably in the circumstances, could be misled.'" *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020); *see also Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (noting that the consumer fraud statutes of "twelve different states . . . all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers"); *Harris v. Mondelēz Global LLC*, No. 19-cv-2249, 2020 WL 4336390, at *2 (E.D.N.Y. July 20, 2020) (similar). Because Plaintiffs' misrepresentation claims fall short of this standard, the court grants Kraft's motion to dismiss them, as discussed below.

19

A.      "NO Artificial" Preservatives, Flavors, or Dyes

Plaintiffs alleged that the presence (or risk of) phthalates in Kraft Mac & Cheese make it misleading for Kraft Heinz to label the product as containing "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes."  (CAC ¶¶ 51–52.)  Notably, Plaintiffs do not allege that Kraft Mac & Cheese does contain artificial preservatives, flavors, or dyes—just that the statements "lead reasonable consumers to believe that the Products are wholesome, safe, and healthy, and do not contain dangerous chemicals or artificial substances, like phthalates."  (*Id.* ¶ 51.)

Plaintiffs have not stated a plausible claim in this regard.  The alleged presence of a negative substance does not prohibit a manufacturer from advertising a product's positive qualities.  For example, in *George v. Starbucks Corp.*, the district court dismissed plaintiffs' claim that Starbucks misled consumers by claiming its baked goods contained "no artificial dyes or flavors" even though it used a "powerful pesticide" to terminate insects in its stores.  No. 19-cv-6185, 2020 WL 6802955, at *1–2 (S.D.N.Y. Nov. 19, 2020), *aff'd*, 857 F. App'x 705 (2d Cir. 2021).  The pesticide was not an artificial dye or flavor and "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores."  *Id.* at *5.  Plaintiffs argue that this case is distinguishable from *George* because here "both the misrepresentations and the dangerous chemicals at issue relate to food," whereas in *George*, the dangerous chemical was a pesticide used to clean Starbucks stores and the "no artificial dyes of flavors" statement referred to food.  (Pls.' Resp. [68] at 14–15.)  It is unclear to the court what the upshot of this distinction could be; just as the pesticide in *George* could not be considered an "artificial dye[] or flavor[]," so too phthalates are not preservatives, flavors, or dyes. In neither case are the statements misleading.

Plaintiffs attempt to draw a comparison to a line of cases in which plaintiffs claimed that defendants' purportedly "natural" foods actually contained artificial or synthetic ingredients.  *See Grimm v. APN, Inc.*, No. 17-cv-00356, 2017 WL 6060624, at *5 (C.D. Cal. Nov. 29, 2017);

*Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015). (*See also* Pl.'s Resp. [68] at 14 (collecting four additional cases concerning "natural" labeling).)  Kraft, however, does not label its product as "natural."  Rather, Kraft makes the specific representations that the product contains no artificial preservatives, colors, or flavors—and Plaintiffs have not alleged that the phthalates they believe to be present in Kraft Mac & Cheese act as any of those. The "natural" line of cases does not save Plaintiffs' claims.

      **B.**    **Puffery**

      Puffery is defined as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 919 (N.D. Ill. 2013).  Puffery statements are "not actionable as a matter of law."  *Thompson v. Procter & Gamble Co.*, No. 18-cv-60107, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018); *see also Pappas v. Pella Corp.*, 363 Ill. App. 795, 803, 844 N.E.2d 995, 1002 (1st Dist. 2006) ("[M]ere puffery cannot form the basis of a consumer fraud claim.").  When there is a question of fact as to whether a statement is an express warranty or mere puffery, a claim cannot be dismissed on the pleadings.  *See, e.g.*, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) (finding that "wholesome" and "smart choices made easy" on a decal cannot be dismissed as puffery); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 906 (N.D. Ill. 2013) ("smooth, shiny, and manageable [hair] for up to 30 days" cannot be dismissed as puffery); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407–08 (E.D.N.Y. 2004) (phone companies' TV advertisements suggesting superiority cannot be dismissed as puffery).

      The phrases Plaintiffs take issue with—"The Taste You Love" and "Gooey, Cheesy Goodness"—are textbook puffery.[12]  Representations about taste are, by definition, "not

---

[12]    Kraft also argues that the statement "[t]he part of parenting that's impossible to mess up" is puffery.  That statement appears on Kraft's website, and Plaintiffs have not alleged it to be actionable.  (*See* Pls.' Resp. [68] at 19.)

quantifiable, objective statements." *PETA v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-4301, 2016 WL 1642577, at \*3–4 (N.D. Cal. Apr. 26, 2016) (holding that "Great-Tasting Meat From Healthy Animals" and "Raised Right Tastes Right" are puffery); *see also, e.g.*, *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) ("Defendant's advertising, 'WE LOVE OUR HENS, YOU'LL LOVE OUR EGGS,' or more simply, 'WE LOVE OUR HENS,' . . . are paradigmatic examples of puffery."). Plaintiffs argue that "The Taste You Love" is not puffery because it is "part and parcel" of the three "NO Artificial" statements; one must read these statements together because they "appear together on the packaging as a single assertion, depicted on a piece of lined paper that appears to have been ripped out of [a] notebook." (Pls.' Resp. [68] at 12.) Using its common sense, as courts must do when ruling on a motion to dismiss, the court disagrees that these statements would mislead reasonable consumers to believe that Kraft Mac & Cheese is more "wholesome, safe, and healthy" than it truly is. (*See id.*) Indeed, Plaintiffs' own allegations regarding Kraft's vast sale volumes arguably confirm that many consumers do, indeed, love the taste of Kraft Mac & Cheese.

One also cannot read the phrase "gooey, cheesy goodness" as anything but puffery. Plaintiff argues that, in context, "goodness" connotes healthiness. For support, Plaintiff cites *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1085 (N.D. Cal. 2017), in which the court found that phrases suggesting the products were healthy—"Start with a Healthy Spoonful," "Invest in your Health Invest in yourself," "good for you," and "balanced breakfast"—could not be dismissed as puffery. Those statements, clearly connoting healthiness, are distinct from "gooey, cheesy goodness," which do not obviously ring of health (and may even conjure cholesterol concerns). Indeed, another court has found "a world of goodness" to be "too hard to quantify objectively or to be reasonably relied upon," such that it must be considered non-actionable puffery. *Truxel v. Gen. Mills Sales, Inc.*, No. 16-cv-4957, 2019 WL 3940956, at \*2 (N.D. Cal. Aug. 13, 2019). While Plaintiffs attempt to distinguish *Truxel* by noting that, there, the sugar content— unlike phthalate content—was disclosed on the package, that fact had nothing to do with the

court's puffery analysis, which concerned the vagueness of the language itself, not other information disclosed on the box. The same is true of *Weiss v. Kroger Co.*, No. 14-3780, 2014 WL 5114608, at *3 (C.D. Cal. Aug. 8, 2014), where the challenged statement touted that "[t]here's a whole lot of goodness contained in each and every tiny sunflower seed. Grab a handful and enjoy." *Id.* at *3. That statement was puffery, not because the salt content disclosed on the label counteracted the slogan's message, but because the statement itself was "highly subjective." *See id.* The court finds no question of fact as to whether "gooey, cheesy goodness" is an express warranty.

## IV. Breach of Warranty and Unjust Enrichment (COUNTS II, III, & IV)

In addition to their deceptive business practices claims, Plaintiffs claim unjust enrichment (Count II), Breach of Implied Warranty (Count III), and Breach of Express Warranty (Count IV).

An unjust enrichment claim "will stand or fall" with a plaintiff's substantive claims for consumer fraud. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because the court is not dismissing Plaintiffs' failure-to-disclose claim at this time, it also will not dismiss Plaintiffs' appended unjust enrichment claim.

In Count III, Plaintiffs allege that Kraft's Mac & Cheese products "were not of merchantable quality and were not fit for their ordinary use as they contained (or risk containing) dangerous phthalates." Breach of implied warranty is a contract claim, one element of which is privity between the parties. Plaintiffs have pleaded that they are in privity with Kraft as the intended end purchasers of Kraft Mac & Cheese (CAC ¶ 105), but that is typically insufficient to satisfy the privity requirement for purposes of economic damages. *See, e.g.*, *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *Manley*, 417 F. Supp. 3d at 1121 ("[U]nder Illinois law, a claim for breach of implied warranty . . . requir[es] privity of contract."); *Catalano v. BMW of N. Am.*, LLC, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (New York law "require[s] privity between a plaintiff and defendant with respect to claims for breach of

23

the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic"). Plaintiffs identify only one exception to the privity requirement, arguing that "[a]t a minimum, Plaintiff Michelle Francione, a resident of Massachusetts, can maintain a breach of implied warranty claim" because Massachusetts does not impose the privity requirement in consumer suits. (*See* Pls.' Resp. [68] at 24 (citing *Jacobs v. Yahama Motor Corp., U.S.A.*, 649 N.E.2d 758, 763 (Mass. 1995); *Scheinder v. BMW of N. Am., LLC*, No. 18-cv-12239, 2019 WL 4771567, at *6 (D. Mass. Sept. 27, 2019)). The court grants Kraft's motion to dismiss all but Plaintiff Michelle Francione's breach of implied warranty claims.

The court also dismisses Count IV of the CAC, which asserts that Defendants "made express representations" to Plaintiffs that Kraft Mac & cheese is "wholesome, safe, healthy and free from dangerous and artificial substances like phthalates." (CAC ¶ 110.) Because the court has found the statements on Kraft's Mac & Cheese label to be either true or puffery, Plaintiffs' breach of express warranty claim fails. *See, e.g.*, *Kennedy v. Mondelez Global LLC*, No. 19-cv-302, 2020 WL 4006197, at *14 (E.D.N.Y July 10, 2020) (stating that the standard for assessing a breach of express warranty claim "is the same as that analyzed under New York's consumer protection law"); *Brodsky v. Aldi Inc.*, No. 20-cv-7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (dismissing breach-of-warranty claims where "a reasonable consumer could not plausibly read the label as plaintiffs suggest").

## CONCLUSION

For the reasons set forth above, the court grants in part and denies in part Kraft's motion to dismiss [62]. The court dismisses Plaintiffs' claims for false statements, breach of implied warranty as to all Plaintiffs except Michelle Francione of Massachusetts, and breach of express warranty. The court denies Kraft's motion to dismiss Plaintiffs' claims regarding material omissions and unjust enrichment, as well as Plaintiff Francione's breach of implied warranty claim. Kraft's pleading in response to the claims that survive this ruling is due on February 17, 2023.

ENTER:

Dated:  January 12, 2023

REBECCA R. PALLMEYER
United States District Judge